Blairsville National Bank, Appellant, *v.* Myers.

Argued November 26, 1962. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen and O'Brien, JJ.

*John Y. Scott,* with him *William M. Ruddock,* and *Fisher, Ruddock & Simpson,* for protestant, appellant.

*Frederick G. Antoun,* Deputy Attorney General, with him *Richard M. Woodcock,* Assistant Attorney General, and *David Stahl,* Attorney General, for Secretary of Banking, Department of Banking, and Secretary of Commonwealth, appellees.

*David R. Tomb, Jr.,* for applicant, appellee.

Opinion by Mr. Chief Justice Bell, January 21, 1963:

This is an appeal by the Blairsville National Bank protesting the action of the Department of Banking in approving Articles of Incorporation for the Conemaugh Valley Bank.* The proposed bank is to be located at 57 East Market Street, Blairsville, Pennsylvania, almost directly across the street from the Blairsville National Bank. Five banks, whose principal offices are in Indiana County, protested against the approval of

---

* Hereinafter called Conemaugh. The Articles were filed April 24, 1962, and approved by the Banking Department on June 22, 1962.

a charter for Conemaugh but Blairsville National Bank was the only protestant to appear at the hearings held by the Secretary of Banking, or thereafter appeal to this Court.

All the procedural and technical requirements of the Banking Code of 1933,* as amended, and of the Department of Banking Code of 1933,** as amended, were followed and need not be recited here.

This appeal is in the nature of a broad certiorari: *Western Pennsylvania National Bank v. Myers,* 407 Pa. 298, 180 A. 2d 423, and cases therein cited; and we consider the entire record to determine whether the applicable tests for sustaining the action of the Department of Banking have been met.

In *Philadelphia Savings Fund Society v. Myers,* 406 Pa. 438, 179 A. 2d 209, the Court succinctly stated the applicable tests (p. 441) : "A decision of the Department of Banking or of the Banking Board will be sustained unless it is based upon facts or conclusions which are not adequately supported by the evidence, or it committed a clear abuse of discretion, or exceeded its power, or based its decision, conclusion or Order on an erroneous interpretation of the law: . . .".

Although not required by law to do so, the Secretary of Banking wisely held hearings to consider the application of Conemaugh and the objections and protests thereto. The testimony taken at the hearings, the files of the department, the Articles of Incorporation, the investigation report of the Chief Examiner of the Department of Banking, L. W. Piedi, and other pertinent data, were made a part of the 474-page record. Unfortunately, neither the Secretary of Banking nor the Banking Department prepared or filed any adjudication, or made any findings of fact, or gave any rea-

* Act of May 15, 1933, P. L. 624.
** Act of May 15, 1933, P. L. 565.

sons for the conclusions which it reached or for the Secretary's decision to approve the charter.* As a result, a review of the record by this Court is not only onerous and laborious, but its evaluation is particularly difficult.

Section 306B of the Banking Code provides that if the Department of Banking shall approve the Articles of Incorporation it shall endorse its approval thereon and return them to the Department of State. While neither the Department, nor the Secretary of Banking, made any specific findings or conclusions but merely endorsed its approval on the Articles and returned them to the Department of State, *that action*, pursuant to Section 306, amounts to and necessarily is a finding, on all the evidence presented, that:

1. The name of the proposed incorporated institution is not likely to mislead the public as to its character or purpose.

2. The convenience and advantage of the public will be served by the proposed incorporation and the density of the population in the neighborhood designated for the place of business of such proposed incorporated institution and in the surrounding country** affords reasonable promise of adequate support for the enterprise.

---

* Under Section 306 of the Banking Code (Act of May 15, 1933, P. L. 624, as amended, 7 P.S. §819-306B), unless the Department of Banking *dis*approves the Articles, it is *not required* to state the reasons for its action. Nevertheless, particularly in a contested case, it is not only desirable, but good administrative practice, for the Department to prepare and file findings of fact, conclusions, and the reasons for its decision, so that in the event of appeal this Court will be better able to evaluate the evidence and the propriety of the action taken by the Department.

** Neither the words "neighborhood" nor the "surrounding country" can be precisely fixed by metes and bounds, or by precise geographical dimensions or by political subdivisions or areas. They connote a "trade area" as to the size and extent of which even

3. The responsibility, character, and general fitness for the business of the incorporators, directors, and officers named in the articles are such as to command the confidence of the community and to warrant the belief that the business of the proposed incorporated institution will be honestly and efficiently conducted in accordance with the intent and purpose of this act.

4. No fee, commission, or compensation has been paid or promised to any person or corporation for the promotion or organization of the proposed banking institution.

5. The authorized common capital is adequate.

Appellant is the only bank in Blairsville. It represents a merger of three banks which closed during the depression but were reopened thereafter as the Blairsville National Bank. Appellant contends (1) that the evidence was inadequate to support the finding and decision of the Department of Banking approving Conemaugh's application, and (2) that the Department clearly abused its discretion in approving the charter (Articles). In support of its position appellant contends (a) that the past history of the banking business in Blairsville demonstrates that it has become a "one bank" town; (b) that the present banking facilities in Blairsville are adequate to meet the banking needs of the neighborhood and the surrounding country and the existence of two banks therein will lead only to an "overbanked" community which will be detrimental to "depositors, creditors, stockholders and the public alike"; (c) that a population of 9,091 is a pitifully small population figure to support more than one bank; (d) that the population of the "trade area"

experts can sincerely differ and consequently the determination of this area must necessarily be left to the discretion of the Secretary of Banking: *Western Pennsylvania National Bank v. Myers*, 407 Pa., supra.

has been decreasing; (e) that Indiana County is recognized Federally as a "distressed area"; (f) that the density of the population of the community or "trade area" to be served by Conemaugh has been declining; (g) that economic conditions in that area have been deteriorating; (h) that "the density of the population in the neighborhood designated for the place of business of Conemaugh and in the surrounding country" does not afford reasonable promise of adequate support for the new bank; and (j) that its incorporation will not enhance the advantage of the public.

Appellant also points out (a) that the Comptroller of the Currency disapproved a branch bank application for Blairsville by the First National Bank of Indiana in 1955 and in 1958, and (b) that the present Secretary of Banking disapproved in 1958 the application of the Homer City State Bank for a branch bank in Blairsville and (c) that since that time economic conditions in Blairsville have become worse instead of better.

Appellant further points out that the Department's Chief Examiner, Mr. L. W. Piedi, recommended that the present application of Conemaugh be disapproved. Of course, Piedi's findings and recommendations are only advisory, and the decision of the Secretary of Banking is the decision of the Department of Banking. Appellant further contends (a) that none of the incorporators or proposed directors of Conemaugh have had any experience in the business of banking and (b) while they have a fine reputation, their experience and general fitness for the business of banking are not such as to command the confidence of the community and warrant the belief that the business of the proposed institution will be efficiently conducted. Moreover, while the Treasurer of the proposed bank has had considerable experience in banking, such experience has been very limited, insofar as operating a bank is concerned.

On the other hand, Conemaugh presented evidence that the "trade area" was larger than and different from that delineated by the protestant, and that this area had not been deteriorating, even though western Pennsylvania and Indiana County as a whole have shown a marked decline in population and employment. Applicant also presented evidence from business men in this wider area who testified that their businesses had increased substantially during the last ten years. Furthermore, the median income for Blairsville has risen from $2,484 in 1950 to $5,599 in 1960; and the total income for Blairsville has increased from $4,048,000 to $7,508,000. Home ownership has increased 10 percent, and the deposits of the appellant Blairsville National Bank have risen from $5,875,000 in 1950 to $9,668,196 as of December 31, 1961.

Moreover, the First National Bank of Indiana, which filed two of the earlier applications, showed in the past five years a growth of 83 percent, while the Homer City Bank, whose application was refused in 1958, showed a 46.1 percent growth. It is likewise important to note that pledges of intention to make cash deposits in Conemaugh totaling over $600,000 had been received from 254 individuals.*

In *Western Pennsylvania National Bank v. Myers,* 407 Pa., supra, we said (pp. 305-306) : "This Court aptly said in Dauphin Deposit Trust Co. v. Myers, 401 Pa. 230, 164 A. 2d 86 (pp. 241-242) : 'As we stated in Delaware County National Bank v. Campbell, 378 Pa. 311, 314, 325, 106 A. 2d 416; "The Department of Banking was created not to manage or operate a bank but to supervise a bank, and to be a watchdog in the interests of depositors, creditors, shareholders and of the community in general . . . Part of the powers and duties of the Department of Banking . . . is to determine

---

* However, applicant's testimony included some prognostications of prosperity which, we believe, found no support in the facts.

. . . *whether* the community served and from which a bank draws its depositors and clients *has adequate banking facilities and is not overbanked* . . . . The legislature . . . *did not exclude or intend to exclude competition between banks; it intended, inter alia, to exclude such competition as would likely weaken or destroy some banks* in an overbanked community and thus weaken or injure the entire banking system, to the detriment of depositors, creditors, stockholders and the public alike." ' See also Philadelphia Saving Fund Society v. Myers, 406 Pa. 438, 449, 179 A. 2d 209."

A Supreme Court cannot be a Secretary of Banking or a Department of Banking or a Banking Board. These men are not only experts in the technical field of banking, but they may have knowledge of intangibles and imponderables, of strengths and weaknesses which may exist in a particular bank or in the broad banking situation in that banking area which are not clearly or definitely or concretely disclosed in the cold, bare record. For these reasons much must be left to the discretion of the Secretary of Banking or, as the case may be, to the Banking Board.

We are well aware of the accuracy of the statements in *Philadelphia Saving Fund Society v. Myers,* 406 Pa., supra, where the Court said (pp. 449-450): "The question of whether there is a need for the services and facilities of an additional bank or branch is sometimes a delicate and difficult one. The dangers inherent in any situation which may possibly or likely create an overbanked area that may likely weaken or destroy some existing banks to the detriment of depositors, creditors, stockholders, and the public alike, must never be forgotten or minimized . . . . ' ". . . Part of the powers and duties of the Department of Banking . . . is to determine . . . whether the community served and from which a bank draws its depositors and clients has adequate banking facilities and is not over-

banked . . . '. . . the clear intention of the statute . . . is the same: to guard against "overbanking" on the one hand, and "underbanking" on the other; . . .' " ' "
However, we appropriately added: " 'Where a Board [or Department] is composed of able and experienced experts who are dealing with technical questions, a Court should be loath to find a clear abuse of discretion upon a subject or subjects as to which they are far better qualified than any Court.' "

There is undoubtedly adequate evidence in the cold record before us to justify either the grant or the refusal of Conemaugh's application for a banking charter. What makes our task more difficult is the fact that we have no way of knowing or determining (a) whether the "trade area" selected by the appellant, or that selected by the appellee, justifiably constitutes the "neighborhood" or "surrounding country" as those words are used in the statute; or (b) the reasons why the Secretary of Banking disapproved an application for a branch bank in Blairsville in 1958—he may have had valid reasons which have no pertinency to the present application; and (c) we cannot know with any justifiable certainty which set of witnesses are more accurate and worthy of belief as to both matters of fact and matters of opinion.* Nevertheless, under all the evidence in this record, we cannot decide that there was a clear abuse of discretion by the (Secretary of the) Department of Banking.

The Banking Department's approval of Articles of Incorporation for the Conemaugh Valley Bank is affirmed.

---

* We mention these difficulties in order to illustrate and emphasize the desirability of continuing the practice of the Department to make findings of fact and conclusions whenever protests are filed against the grant of a new bank or a branch bank, in order to support the Secretary's (Department's) final decision.