Cement National Bank, Appellant, v.
Department of Banking.

Argued January 13, 1967. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused June 26, 1967.

*Francis B. Haas, Jr.,* with him *Rod J. Pera,* and *McNees, Wallace & Nurick,* for appellants.

*Frederic G. Antoun,* Deputy Attorney General, with him *William M. Steinbach,* Assistant Attorney General, and *Edward Friedman,* Attorney General, for Department of Banking, appellees.

*Robert L. Rubendall,* with him *Martin H. Philip,* and *Metzger, Hafer, Keefer, Thomas and Wood,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, May 24, 1967:

This is an appeal from the Order of the Department of Banking *authorizing* Tri-County State Bank of Bow-

manstown, whose principal office is in Carbon County, *to establish a branch bank* at 1840 Main Street in the Borough of Northampton, Pennsylvania.

On July 25, 1966, Tri-County State Bank (hereinafter referred to as Tri-County) filed an application with the Department of Banking in accordance with the new Pennsylvania Banking Code of 1965 (Act of November 30, 1965, P. L. 847, 7 P.S. §904(b)(iv)), seeking authority to establish a branch bank at 1840 Main Street, Northampton, Northampton County. At that time, Tri-County did not have any offices in Northampton County.

On August 19, 1966, Cement National Bank and Merchants National Bank of Allentown notified the Department of Banking of their opposition to the proposed branch.

Norman E. Oelschlegel, an examiner for the Department of Banking, made an *exhaustive investigation* of the merits of the application and *in particular the need* for a branch bank at the proposed location. In the course of his investigation Oelschlegel interviewed officers of the banks which he believed were in the banking area from which the proposed branch would draw its depositors, customers and business, including particularly those of the appellant banks. Officers of these banks were given an opportunity to state their reasons for opposing the proposed branch. Thereafter, on August 26, 1966, Oelschlegel submitted to the Secretary of Banking a detailed and exhaustive report supported by voluminous data of the investigation and examination he, together with an examiner representing the Federal Deposit Insurance Corporation, had conducted into this matter. Therein Oelschlegel recommended that the Department approve the application for the branch.

On September 9, 1966, Cement National Bank, Merchants National Bank of Allentown, and Walnutport

State Bank filed an official letter of protest and in support thereof submitted a large amount of detailed documentary material.

On September 20, 1966, the Department of Banking, after studying all the evidence pro and con, approved the application of Tri-County and issued a letter of authority authorizing it to establish a branch bank at 1840 Main Street, Northampton, Northampton County, Pennsylvania. It is worthy of note that the Federal Deposit Insurance Corporation, after careful investigation, also approved this branch.

Thereafter, the aforesaid competing banks filed a petition for allowance of appeal under Supreme Court Rule 68½* and a petition for a writ of supersedeas. Both of these petitions were granted on November 4, 1966.

Appellants raise three questions. They first contend that the statutes of Pennsylvania do not authorize the Department of Banking to deny to banks protesting branch applications the right to inspect such applications and the supporting material submitted therewith. We shall consider this in inverse order.

Appellants further contend that the Department of Banking, in refusing to hold a hearing at the department level and in failing or refusing to make findings of fact, or to set forth and inform all parties of its reasons for approving the branch bank application, has violated appellants' (a) procedural rights, and (b) their property rights and (c) other (unspecified) Con-

---

* Although no one raised the question of the proper procedure for bringing an appeal to this Court, §905(c) of the Banking Code of 1965 provides: ". . . The decision of the department shall be final and shall not be subject to review except by the Supreme Court upon broad certiorari." We interpret this to mean that an appeal will lie under Rule 68½ only if specially allowed by the Supreme Court or a Judge thereof, and, if allowed, it will be heard on broad certiorari.

stitutional rights.* All of these contentions are, as we shall see, devoid of merit.

Section 905 of the Banking Code of 1965 pertinently provides: *"Approval of branch by department*** (a) *Investigation and discretionary hearings*—Upon receipt of an application for approval of a branch which satisfies the requirements of this Act, the department shall conduct such investigation as it may deem necessary *and, in its discretion, may hold hearings before the department or before the Banking Board."*

The comment of the Banking Commission is as follows:*** *"Subsection (a) does not require hearings in connection with branch applications* but permits the department to hold such hearings *in its discretion* either before the department or before the banking board."

Appellants contend that under the Banking Code (1) hearings are necessary, and the only discretion which the Department has is whether to hold a hearing before the Department or before the Banking Board, and (2) the Department must give detailed reasons for its decision. This interpretation of the Code and these contentions are devoid of merit.

Section 905 further provides: "(c) *Action by department*—Within sixty days after receipt of the application . . . the department shall . . . approve the application *if it finds that there is a need for banking services or facilities such as are contemplated by the establishment of the proposed branch* and that the requirements of this act have been complied with. . . . If the department approves the application, it shall issue

---

* Since these contentions are sometimes interrelated or overlapping, they will sometimes be considered together.

** Italics throughout, ours.

*** Section 104(a) provides that the comments of the Commission may be consulted in the construction and application of the provisions of the Act.

to the institution a letter of authority to establish the branch. If the department disapproves the application, it shall give the institution written notice of its disapproval and a statement in detail of the reasons for its decision. The decision of the department shall be final and shall not be subject to review except by the Supreme Court upon broad certiorari."

It is clear from the above quoted provisions of the Code that neither an adversary hearing nor any other kind of hearing is *required* before the Secretary of Banking or at the Department level. This nonrequirement of a hearing is because both the Banking Department and the Legislature have recognized the delicate and sensitive nature of banking and of the banking information in the possession of the Banking Department, which in some matters should remain confidential, and the disastrous effects which divulgence of this information might have on all banks in that community. This is further confirmed (1) by Article III, §302, of the Department of Banking Code* which makes the divulgence of information by the Secretary or by any officer or employee of the Department of Banking, with certain enumerated exceptions, a misdemeanor, and (2) by the Administrative Agency Law of 1945.

Section 51 of the Administrative Agency Law of June 4, 1945, P. L. 1388, as amended, 71 P.S. §1710.51, by the Act of June 13, 1963, P. L. 135, and by the Act of July 31, 1963, P. L. 425, contains an enumeration of the "agencies" to which the provisions of the Administrative Agency Law applies. Such enumeration includes the Banking Board, but does not include the Secretary or the Department of Banking.

It is likewise clear from the above quoted language of (c) that the Department is required sur an applica-

---

* Act of May 15, 1933, P. L. 565, 71 P.S. §733-302.

tion for a branch bank to give a statement of the reasons for its decision *only in the event it disapproves an application.*

However, we again emphasize, as we did in *Blairsville National Bank v. Myers,* 409 Pa. 526, 534, 187 A. 2d 655, the desirability of having the Department make findings of fact and conclusions—which in their discretion may be brief—whenever protests are filed against the grant of a new bank or of a merger, or of a branch bank, in order to support the Department's final decision. This practice is especially desirable where an appeal by broad certiorari is allowed by this Court.

Delaware County National Bank v. Campbell, 378 Pa. 311, 106 A. 2d 416, which is relied upon by appellants, supports the Banking Department and not the appellants. It also vividly portrays the respective powers of the Department of Banking in contrast with the powers of a Court and the reasons therefor. In that case, this Court first held that a National bank has a standing to protest the grant of a State bank's application for a branch. With respect to a decision in *Short's Estate,* 315 Pa. 561, 173 A. 319, which had quashed an appeal from the refusal by the Board of Finance and Revenue of a refund for inheritance taxes, the Court pertinently said (page 322): "We believe the decision was based upon the fact that the action of the Board [of Finance and Revenue] *was a matter of legislative grace* and not a judicial act and that it did not affect property rights. . . . Newport Township School District v. State Tax Equalization Board, 366 Pa. 603, supra. Cf. also: Grime v. Department of Public Instruction, 324 Pa. 371, 188 A. 337."

The Court further pertinently said (page 325): "Part of the powers and duties of the Department of Banking, and in cases of mergers with resultant branch banking, part of the powers and duties of the Banking

Board, is to determine, as the Department and Board did in the present case, *whether the community served** and from which a bank draws its depositors and clients has adequate banking facilities and is not over-banked.* . . 'As interpreted by the Banking Board in accordance with its plain terms, the clear intention of the statute in regard to establishment of branches, both by new branch and by merger, is the same: *to guard against "overbanking" on the one hand, and "underbanking" on the other*; . . .'. The legislature, as appellees further admit, did not exclude or intend to exclude competition between banks; it intended, inter alia, to exclude such competition as would likely weaken or destroy some banks in an overbanked community and thus weaken or injure the entire banking system, to the detriment of depositors, creditors, stockholders and the public alike.

. . .

"We therefore interpret §204D as the Banking Board did, namely, a merger [or branch] *may be approved if* the city, borough, or other *community* in which such branch is to be established *is without adequate banking facilities.* . .

"*We will not overrule or reverse the Banking Board if there is adequate evidence to support its findings of fact and the proceeding is free from error of law and there has been no clear abuse of discretion.* Cf.- Rolling Green Golf Club Case, 374 Pa. 450, 458, 97 A. 2d 523. . ."

It is appropriate to note that the dissenting Opinion of Mr. Justice, later Chief Justice, JONES which was joined in by Mr. Justice STEARNE and Mr. Justice

---

* This debatable subject is usually one of the two areas upon which the established banks and the branch-seeking bank disagree. It probably has its basis in the natural desire, although not openly expressed, of nearly every country bank to protect and enhance its future growth and prosperity.

CHIDSEY, went even further than the majority Opinion.
It took the position (1) that the Order of the Department of Banking or of the Banking Board (a) was
nonjudicial and (b) did not adjudicate property rights,
and (2) that the Department of Banking and the
Banking Board had, under Article XVI, §11 of the
Pennsylvania Constitution, only such limited rights as
were granted by the Legislature, including the right to
deny Judicial review.

Banks often forget that they are merely creatures
of a Legislature or of Congress, and have only such
rights as are granted by Statute or by Congressional
Act, as the case may be. The Legislature can grant
such powers and impose such conditions and limitations as it desires on all banks and other bodies it
creates, provided the same are not unlawful or unconstitutional; and in particular, the Legislature is not
required to provide for hearings before its created
bodies such as are constitutionally required in judicial
proceedings. Moreover, in this case, as we have seen,
the Legislature is not required to provide, nor has it
provided for hearings at the Department level. The
denial of a Judicial or a public or adversary hearing
before the Department of Banking or even before a
Banking Board is not a violation of procedural due
process or of any other Constitutional right; nor is the
refusal to permit (a) the inspection of applications
and supporting material, or (b) the divulging of information* by the Secretary of Banking or by any officer or employee of the Department, a violation of any
Constitutional right which is possessed by a bank.

To summarize: The denial by or the failure of the
Legislature to provide for a hearing before the Department of Banking or for a Judicial review of the action
of the Department of Banking would not be a depriva-

---

* See, supra.

tion or violation of any Constitutional right which is or may be possessed by a bank. Cases, supra.

We note that under the Federal system, the Comptroller of the Currency is not required to conduct hearings sur the establishment of a branch bank. *First National Bank of Smithfield v. Saxon*, 352 F. 2d 267 (C.C.A. 4, 1965); *Bank of Sussex County v. Saxon*, 251 F. Supp. 132 (U.S.D.C.D. N.J. 1966); *Farris v. Indian Hills National Bank*, 244 F. Supp. 594 (U.S.D.C.D. Neb. 1964).

In the *Bank of Sussex County* case, the Court reiterated what had previously been held in the *Smithfield Bank* case and said (page 142): "The opinion [in *Smithfield*] also recites (p. 270) that 'Procedural due process is not offended by the Comptroller's practice [of dispensing with a hearing]. The absence of a hearing provision in the Banking Act raises no Constitutional question, for the omission was within the power of Congress.'"

In *Farris*, the Court said (pages 595-596): "The Administrative Procedure Act, 5 U.S.C.A. §1004 requires a hearing '[i]n every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing.' There is no provision that we can find in the National Banking Act, 12 U.S.C.A. for such a hearing. Indeed 12 U.S.C.A. §27 provides that a certificate shall be issued in the following manner: 'If, upon a careful examination of the facts so reported, and of any other facts which may come to the knowledge of the comptroller, whether by means of a special commission appointed by him for the purpose of inquiring into the condition of such association, or otherwise, it appears that such association is lawfully entitled. . . .'

"The quoted statute obviously does not require a hearing. In effect it negates the *necessity* for a hearing by setting out other possibilities for arriving at a

decision. Terminology such as 'or otherwise' would appear to leave the Comptroller free to determine for himself whether or not he will have a formal hearing in any given case. We find that he is not required to hold formal hearing." (Italics in original.)

See also, *Peoples Bank of Van Leer v. Bryan,* 397 S.W. 2d 401 (Court of Appeals, Tenn. 1965). There the Court said (page 405) : "The granting or withholding of permission to establish a branch office of a bank is not a judicial function, but is purely an administrative function." And, also (page 407) : "In our opinion, it makes no difference whether the Superintendent of Banks acquired facts upon which he based his decision by an investigation or by a hearing, so long as the evidence shows his decision was based upon some material fact or facts, and was not arbitrary or illegal. The manner in which the facts are obtained, whether by letters, affidavits, depositions or oral testimony, is a matter which is left to the discretion of the Superintendent, so long, of course, as he observes the basic requirements of private as well as public interest."

With these interpretations we agree.

Appellants contend that the *Smithfield* case is clearly distinguishable because an appeal lies under Federal law from a comptroller's decision, with a hearing de novo* in the District Court. Even if we assume that a right of Judicial appeal is Constitutionally required, appellants overlook the fact that Pennsylvania provides a similar Appellate Court review under the Banking Code of 1933, i.e., an appeal to this Court by narrow certiorari and under the present Banking Code of 1965, *an appeal by broad certiorari* is allowed to this Court under Rule 68½.

---

* Whether the hearing de novo thus granted is the kind or a different kind of de novo hearing which is usually held by Courts, it is unnecessary to decide.

Appellants further contend that the record with all the voluminous exhibits and data does not support the Department's conclusion that a branch bank may be established at the proposed location. The *evaluation* of all this evidence, some of it conflicting, some of it merely deductions and conclusions from all the data submitted to or gathered by the Department, is sometimes difficult. However, we must approach this and similar cases mindful of what this Court aptly said in *Blairsville National Bank v. Myers,* 409 Pa. 526, 533-534, 187 A. 2d 655: "A Supreme Court cannot be a Secretary of Banking or a Department of Banking or a Banking Board. These men are not only experts in the technical field of banking, but they may have knowledge of intangibles and imponderables, of strengths and weaknesses which may exist in a particular bank or in the broad banking situation in that banking area which are not clearly or definitely or concretely disclosed in the cold, bare record. For these reasons much must be left to the discretion of the Secretary of Banking or, as the case may be, to the Banking Board.

"We are well aware of the accuracy of the statements in Philadelphia Saving Fund Society v. Myers, 406 Pa., supra, where the Court said (pp. 449-450): *'The question of whether there is a need for the services and facilities of an additional bank or branch is sometimes a delicate and difficult one.* The dangers inherent in any situation which may possibly or likely create on overbanked area that may likely weaken or destroy some existing banks to the detriment of depositors, creditors, stockholders, and the public alike, must never be forgotten or minimized. . . . " '. . . *Part of the powers and duties of the Department of Banking . . . is to determine . . . whether the community served and from which a bank draws its depositors and clients has adequate banking facilities and is not over-*

*banked. . . ". . . the clear intention of the statute . . . is the same: to guard against 'overbanking' on the one hand, and 'underbanking' on the other; . . .".' "'* However, we appropriately added: ' "Where a Board [or Department] is composed of able and experienced experts who are dealing with technical questions, a Court should be loath to find a clear abuse of discretion upon a subject or subjects as to which they are far better qualified than any Court." ' "

We have studied the voluminous record and are satisfied that *the evidence to establish a need for this branch bank* was both adequate and ample, and the Department of Banking in approving the proposed branch was not guilty of an abuse of discretion or an error of law.

Order affirmed.

Mr. Justice COHEN concurs in the result.

───────

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

All of the parties to this dispute, as well as the majority opinion, agree that the protesting banks, appellants herein, have a right to seek judicial review in this Court of the action of the Department of Banking in granting the appellee, Tri-County State Bank of Bowmansville, authority to establish a branch bank in the Borough of Northampton. However, since the Department of Banking has neither held a hearing, whereby a record could be established, nor even articulated its reasons for rejecting appellants' protests, the procedure sanctioned by the majority opinion denies appellants effective judicial review. Under the view of the majority, appeal to this Court lies only by way of Rule 68½ which is discretionary on our part. Thus unless we grant such an appeal, a protesting bank may never know why its protest was rejected. But even when an appeal is granted, the protesting bank cannot receive adequate judicial review (as is demonstrated

by the majority opinion's cursory discussion of the merits) because in that event we must attempt to cull from a record, consisting only of exhibits, whether the Department of Banking abused its discretion. Such a task is difficult enough when there is a record of what transpired below, but is wholly impossible when there is not.[1] See *Blairsville Nat'l Bank v. Myers,* 409 Pa. 526, 187 A. 2d 655 (1963).[2]

Prior to the adoption of the Banking Code of 1965, Act of November 30, 1965, P. L. 847, a state bank had to wait at least six months before it could obtain permission to establish a branch bank whereas a national bank could obtain such permission within six months. It is clear that one of the main impetuses for the streamlining of the branch banking procedure was to

[1] The record in this case was compiled solely in response to our granting appellant's petition for review under Rule 68½; prior to that there was no actual record. I am unable, moreover, to agree with the majority's characterization of this ex parte record as being either adequate or voluminous. Mr. Oelschlegel's examination was commenced on August 23, 1966, and completed on August 24, 1966. The protesting banks were never afforded an opportunity to know the basis for the applicant's claim of need, did not know the boundaries of the proposed service area, nor even whether their ability to adequately serve the community was being unfairly challenged. Most importantly, the record does not reveal the reasons why the Secretary of Banking summarily rejected appellants' protests.

[2] In *Blairsville Nat'l Bank v. Myers,* 409 Pa. 526, 528, 187 A. 2d 655, 657, the Court observed that "the Secretary of Banking wisely held hearings to consider the application of Conemaugh and the objections and protests thereto." Moreover, the Court stated in a footnote that "particularly in a contested case, it is not only desirable, but good administrative practice, for the Department to prepare and file findings of fact, conclusions, and the reasons for its decision, so that in the event of appeal this Court will be better able to evaluate the evidence and the propriety of the action taken by the Department." Id. at 529 n.*, 187 A. 2d at 657 n.4. See also *Delaware County Nat'l Bank v. Campbell,* 378 Pa. 311, 321 n.*, 106 A. 2d 416, 421 n.6 (1954).

place state banks on par, timewise, with the national banks.[3]  Act of November 30, 1965, P. L. 847, 7 P.S. §2005, comment; see ibid, §905 comment.[4]  In a later portion of this opinion I shall demonstrate that this prior time differential is not applicable when the branch application in either the state or national banking system, is opposed by a protesting bank.[5]  Initially, however, I shall explain how the majority opinion not only is in conflict with several recent decisions of this Court, which have all recognized the rights of protesting banks in this situation, but also deprives appellants of procedural due process.

At the outset, it should be noted that the Banking Code of 1965, though a substantial revision and reorganization of the Banking Code of 1933, was not intended to create substantive changes relating to the establishment of branch banks.  Act of November 30, 1965, P. L. 847, §901, 7 P.S. §901, comment.  This is important to bear in mind, despite the fact that this aspect of the instant case, superficially viewed, involves merely procedural questions, because the procedural

---

[3] Compare *First Nat'l Bank of Logan v. Walker Bank & Trust Co.*, 385 U.S. 252, 87 S. Ct. 492 (1966), where the Supreme Court of the United States recently held that a national bank desirous of opening a branch in a particular state had to comply with its branch banking laws. The Court was satisfied that the legislative history of the National Banking Act, 12 U.S.C. §36(c)(1)(2). (1964) showed a Congressional intention "to place national and state banks on a basis of 'competitive equality' insofar as branch banking was concerned." 385 U.S. at 261.

[4] The Comments of the Banking Law Commission have been officially adopted by the Legislature. Act of November 30, 1965, P. L. 847, 7 P.S. §104(a).

[5] Not every application for a branch bank is protested. Department of Banking information indicates that in approximately two-thirds of the branch bank applications, which are eventually approved, no protest is filed. For example, in the instant cases the First National Bank of Allentown informed the Department of Banking they would not object to Tri-County's application.

disadvantages imposed upon the protesting banks by the majority opinion are so grievous that they in effect deprive them, in my view, of a substantive right. It is also well to bear in mind that though the 1965 Code clearly intends certain procedural changes in establishing branch banks, there is no evidence of a legislative intent to deprive the protesting banks of an adequate opportunity to present their case before the Department and to rebut the applicant's claim of need. It is against this background that we should examine the impact of cases construing the 1933 Code.

In *Delaware County Nat'l Bank v. Campbell,* 378 Pa. 311, 106 A. 2d 416 (1954), the question was raised as to whether a national bank which protested the merger of a state bank in its community had standing to appeal from the decision of the Department of Banking despite the absence of an explicit statutory right of appeal and *despite the fact that the Banking Code provisions then in effect did not even require notice of a proposed merger to be given to a national bank in the community.* This Court upheld the national bank's right of appeal. As an examination of its opinion clearly reveals, the basis of this Court's action was its belief that the possibly disastrous consequences of overbanking created in any bank in the area a property right which required protection. It should be clear that where, as in the instant case, the protesting bank is statutorily entitled to notice, the rationale in the *Delaware* case is buttressed by the probable inference that the Legislature adjudges the interest of protesting banks to be such as entitles them to procedural safeguards.

I am also puzzled by the support which the majority draws from the Banking Code's strictures prohibiting disclosure of information contained in applications for the establishment of branch banks. Those strictures, it must be remembered, have been carried

over intact from the 1933 Code to the 1965 Code. In the *Delaware* case as well as in *Blairsville Nat'l Bank v. Myers,* 409 Pa. 526, 187 A. 2d 655 (1963) this Court was not the least troubled by the fact that the procedural steps available to the protesting banks required the same type of disclosure which the majority here finds forbidden by the Act. Moreover, it is noteworthy that the Banking Code's restrictions on divulging of information have never before been urged to apply to the disclosure of branch bank applications to protesting banks. To my mind the simplest explanation of this fact is that the Banking Code's prohibition of disclosure contains the proviso that information obtained by the Department may be divulged "when the publication or divulgement of such information is made by the department pursuant to the provisions of this act. . . ." Act of May 15, 1933, P. L. 565, §302, 71 P.S. §733-302. Reading the Act broadly, which for reasons I shall point out below we must, I think it does provide for such disclosure and hence I find the proviso of §302 does apply to this case.

My reason for saying that we must interpret the Banking Code broadly in favor of the protestant in the instant circumstances is that to do otherwise raises grave problems of due process of law under Art. I, §9 of the Pennsylvania Constitution and the Fourteenth Amendment to the Constitution of the United States.[6] In the *Delaware* case, the Court decided that controversies, like the instant one, arising under the Banking Code are adjudicatory in nature. "[A]djudicatory action cannot be validly taken by any tribunal, whether judicial or administrative, except upon a hearing wherein each party shall have opportunity to know of the claims of his opponent, to hear the evidence intro-

---

[6] See *Delaware County Nat'l Bank v. Campbell,* 378 Pa. 311, 321 n.*, 106 A. 2d 416, 421 n.6 (1954).

duced against him, to cross-examine witnesses, to introduce evidence in his own behalf, and to make argument." *Pennsylvania State Athletic Comm. v. Bratton,* 177 Pa. Superior Ct. 598, 604-5, 112 A. 2d 422, 425 (1955). The Legislature has recognized this constitutional requirement by providing in the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, §31, 71 P.S. §1710.31 that "No adjudication shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard."[7]

Under the majority's interpretation of the Banking Code, the protestant banks will clearly be deprived of an opportunity to be heard, and to know the evidence against them in cases like this. This, I submit, makes the Banking Code, as construed by the majority's opinion, not only unfortunate in effect, but also unconstitutional.

The appellees in this case rely heavily upon an analogy with the federal banking system in support of their position that the absence of a hearing before the Department of Banking does not deprive the appellants of procedural due process. Citing *First Nat'l Bank of Smithfield v. Saxon,* 352 F. 2d 267 (4th Cir. 1965), they argue that since it does not violate due process for the Comptroller of the Currency to approve the

---

[7] I do not mean to intimate by this that proceedings before the Department of Banking of the type involved in the instant case must be attended by the full panoply of trial-type formalities. The delicate nature of many banking proceedings may make appropriate greater informality. See *First Nat'l Bank of Smithfield v. Saxon,* 352 F. 2d 267, 275-76 (4th Cir. 1965) (SOBELOFF, J., dissenting). But the need for such informality may in no event preclude a party in interest from being informed of the evidence presented by an adverse party. See also *Webster Groves Trust Co. v. Saxon,* 370 F. 2d 381 (8th Cir. 1966) ; Davis, Administrative Law §4.04 (1958 edition) ; Id. (1965 Supplement).

branch application of a national bank without affording protesting banks a hearing, the same procedure can be employed by the State Department of Banking.

This argument, however, fails to take into account the availability of judicial review and the record upon which such review is based. In the federal system, the protesting bank has an appeal by right to the federal district court. The district court then holds a hearing where both sides are afforded an opportunity to establish a record in support of their respective positions. On the basis of that record the district court can set aside the Comptroller's action "if, in the light of the facts found by the Court, it concludes that the Comptroller has abused, exceeded or arbitrarily applied his discretion." *First Nat'l Bank of Smithfield v. Saxon,* supra at 272. The district court's decision may be appealed by the losing party to the Court of Appeals which will then have before it the record established in the district court proceeding.

The scope of judicial review in the federal system would be analogous to that sanctioned by the majority opinion if an appeal from the Comptroller's decision went directly to the Court of Appeals and there was no opportunity to establish a record comparable to the one established in the district court. Or conversely, our review would be more on par with the federal system if a protesting bank was afforded the opportunity of a hearing by the Department of Banking or the equivalent thereto. In a very able dissent in the *Smithfield* case, Judge SOBELOFF argued that the majority opinion deprived the protesting banks of an adequate opportunity to press their objections; while the majority of his brethren did not share this view, they did recognize that the review afforded national banks left much to be desired. The judicial review provided appellants in the instant case does not, however, begin

to compare with that afforded by the federal system, and it is for this reason that I find the constitutional problem so substantial.

In the federal system, dissatisfied protesting banks have an appeal by right to the district court. It will be recalled that a prime argument advanced for the policy to curtail hearings in all branch application cases was to equalize the length of time required for a state bank to obtain branch approval as compared to a national bank. Act of November 30, 1965, 7 P.S. §2005, comment. Clearly, however, it is going to take more than two months before a Court of Appeals decision is rendered in a particular case if the protesting bank desires to exhaust its means of appellate review.

It seems to me, therefore, that in order to avoid an interpretation which renders a part of the Banking Code of 1965 unconstitutional, §905 of that Code must be interpreted in such a way as to afford protesting banks an adequate opportunity to place their case before the Department of Banking. The Department may in its discretion hold a formal hearing or it may utilize more informal proceedings, see *First Nat'l Bank of Smithfield v. Saxon*, 352 F. 2d 267, 275 (4th Cir. 1965) (SOBELOFF, J., dissenting),[8] provided that the protesting banks are given an opportunity to rebut the applicant's claim of need. In either event it is incumbent upon the Department to set forth its reasons in such a manner as will afford this Court an adequate record upon which it can make a meaningful determination in a particular case as to whether there has been an abuse of discretion.

I dissent.

Mr. Justice JONES and Mr. Justice EAGEN join in this dissenting opinion.

---

[8] See note 6, supra.