# RRS Imaging Associates Ltd. v. Medical Service Association of Pennsylvania

*Dean A. Weidner*, for plaintiffs.
*Thomas E. Wood*, for defendant.

HOFFER, *J.*, August 10, 1988 — Plaintiffs are doctors, or partnerships and professional corporations made up of doctors. Defendant is Blue Shield, with whom plaintiffs made a contract to provide medical services as "participating doctors." Participating doctors are compensated according to Blue Shield's UCR Program, which calculates usual, customary, and reasonable fees.[1]

---

1. *"Usual*—The fee which an individual doctor most frequently charges to his patients for the procedure performed.

*"Customary*—The customary range of usual fees charged by doctors of similar training and experience in a given geographic area for the procedure performed.

*"Reasonable*—The fee which differs from the usual or customary charges because of unusual circumstances involving

These calculations have as a starting point the doctors' actual charges for the services performed. Blue Shield does not pay the doctors the amount of their actual charges; the doctors are paid according to their UCR profiles. The doctors also agree not to require their patients to pay the difference between the actual charge and the UCR payment from Blue Shield, the UCR payment being typically lower than the actual charge.

Doctors who are paid a salary by a hospital, and then enter private practice, are referred to as "break-out" physicians. Their UCR profiles are initially compensation-based, i.e., they are calculated on the basis of the salary the doctor had been receiving. After the doctor has accrued sufficient actual charges after "breaking out," the profile is changed to an actual charges basis. Blue Shield's practice at the time plaintiffs contracted was that this change would occur no later than the annual update.

Plaintiffs were break-out physicians. According to the complaint, before October 1983, they were salaried; by December 31, 1983, they were on a fee-for-services basis. However, at the time of the next annual update, July 1, 1984, they were kept on a salaried-basis profile; they were not switched to an actual charges basis. They contend that the contract has therefore been breached, and they seek an accounting, payment of the resulting losses, other equitable relief the court deems appropriate, and declaratory judgment that their compensation must be on an actual charges basis.

When this court initially confronted this case, we agreed with defendant's preliminary objection that

---

medical complications which require additional time, skill and experience." Blue Shield's Regulations for Participating Doctors (D)(2).

the dispute should first be heard by defendant's Medical Review Committee, which is the mechanism established by 40 Pa.C.S. §6324(c) and Article X of Blue Shield's By-Laws. We remanded to the committee, but expressly reserved judgment on the exclusivity of that remedy. 42 D. & C. 3d 42 (1985). The committee held a hearing on August 5, 1986. Its decision in favor of defendant was communicated by letter of August 18, 1986.[2] Both parties subsequently moved for summary judgment.

Plaintiffs contend, essentially, that Blue Shield's failure to follow its well-settled practice constitutes a breach of contract. Defendant argues primarily that this court has no jurisdiction over this matter because the committee's decision is final and binding. Defendant also maintains that it was under no obligation to follow its prior practice.

We now address defendant's remaining preliminary objections (whether this court has subject matter jurisdiction of this case, *i.e.*, whether the committee has exclusive jurisdiction over the dispute; and whether the case is properly in equity); and whether summary judgment should be granted in favor of either party.

## I

Defendant challenges the court's jurisdiction, contenting that the Medical Review Committee's

---

2. "[T]he committee determined that the physician groups in this matter were treated fairly, and in the same manner as all other doctors at the 1984 and 1986 profile updates. The committee further determined that Pennsylvania Blue Shield fulfilled its obligations under the participating doctor's agreement by providing such updates . . . ." Letter of August 18, 1986.

decision is final and unappealable. 40 Pa.C.S. §6324(c) provides:

"(c) *Disputes*—All matters, disputes, or controversies relating to the professional health services rendered by the health service doctors, or any questions involving professional ethics, shall be considered and determined only by health service doctors as selected in a manner prescribed in the by-laws of the professional health service corporation."

Article X of Blue Shield's By-Laws contains a similar provision and establishes the Medical Review Committee as the reviewer of disputes. Defendant contends that the committee has exclusive authority to decide disputes. However, in *Pennsylvania Blue Shield v. Department of Health,* 93 Pa. Commw. 1, 500 A.2d 1244 (1985), allocatur denied, 514 Pa. 632, 522 A.2d 560 (1987), a case the court considered en banc, the court stated:

"In 40 Pa.C.S. §6324(c), the law expressly authorizes health service doctors (as prescribed in the professional health service corporation by-laws) to hear and decide disputes between the doctors and the professional health service corporation. In this case, Blue Shield's Medical Review Committee performed that function by hearing and deciding this overcharge dispute. Health service 'regulations' which the department must review and approve are no more than contractual agreements between the doctor and the professional health service corporation. A doctor can always seek review of an unfavorable Medical Review Committee decision concerning a contractual provision with the professional health service corporation in the appropriate state court with jurisdiction over contract disputes." *Id.* at 13-4, 500 A.2d at 1250. This Commonwealth

Court decision takes precedence over several trial court decisions to the contrary.[3]

The present case, unlike those cited which dealt with questions of medical necessity or overcharging, involves the more basic issue of the *method* of calculating payment. As the court stated in *Pennsylvania Dental Association v. Dept. of Health,* 75 Pa. Commw. 7, 461 A.2d 329 (1983):

"One of the conditions of being registered with [Blue Shield], then is that the doctor agrees to the *method* used by PBS to determine fees. If a doctor would not agree, PBS, pursuant to the provisions of section 6324(a), would have the right to remove the doctor from its register with the approval of [the Department of Health]. It seems clear that the method of fixing fees is related to the registration of doctors and is within the reviewing authority of DOH." *Id.* at 12, 461 A.2d at 332 (emphasis supplied). This is an illustration that a dispute will not always end with the section 6324(c) remedy, and that a dispute over the basic method of determining payment has ramifications beyond mere dollars and cents.

The enforcement statute, 40 Pa.C.S. §6310, confers authority on the Departments of Health and In-

3. *V.J. Hajjar Inc. v. Medical Services Assóc.,* 15 D. & C. 3d 251 (1980), was the foundational decision upon which the subsequent cases relied. The court in *Hajjar* decided that since there was statutory remedy, that remedy was exclusive. In *Emergency Medical Associates Ltd. v. Pennsylvania Blue Shield,* 70 Delaware Rep. 538 (1983), aff'd. by memorandum and order, 339 Pa. Super. 623, 488 A.2d 1169 (1984), the court cites *Hajjar* and concluded that the statutory language—"only by health service doctors"—was clear and unambiguous, and meant that this was the exclusive remedy. The opinion in *Carlisle Pediatric Center v. Medical Services Assoc. of Pennsylvania,* 40 D. & C. 3d 250 (1986), relied on *Hajjar* and *Emergency Medical. Weltman v. Pennsylvania Blue Shield,* 39 D. & C. 3d 504 (1986), relied on *Carlisle Pediatric* and *Emergency Medical.*

surance and the courts.[4] It also raises the question of "the purposes of this chapter" and thereby helps to shed further light on the proper interpretation of section 6324(c).

"When necessary to effect the purposes of this chapter, in addition to all other remedies in law or equity, the Insurance Department or the Department of Health, or both, may commence an action in mandamus or for an injunction to prevent any violation of the provisions of this chapter or the continuance of any such violation, or to enforce compliance herewith. Any court having jurisdiction is hereby vested with authority to determine the cause and to issue such process as may be necessary to accomplish the purposes of this chapter." 40 Pa.C.S. §6310.

The purpose of section 6324 is illustrated by its heading: "Rights of health service doctors." Subsection (a) provides that every doctor has the right to register with any professional health service corporation; the corporation may refuse to accept such only with the Department of Health's approval. Subsection (b), entitled "Freedom from control," prohibits the corporation from infringing on the normal doctor-patient relationship, including the patient's choice of a doctor and the doctor's methods of treatment.

Subsection (c) provides that disputes are to be considered and determined only by health service doctors. Considering its context, its purpose seems to be similar to that of the Peer Review Protection

---

4. "[W]here a statutory remedy exists, it is the exclusive remedy unless the statute also preserves the jurisdiction of the courts." *Pennsylvania Game Comm. v. Luzerne C'ty. Tax Claim Bureau*, 66 Pa. Commw. 20, 23, 444 A.2d 783, 785 (1982).

Act, 63 P.S. §425.1 et seq., i.e., "to encourage peer evaluation of the health care. . . ." *Robinson v. Magovern*, 83 F.R.D. 79, 87 (W.D. Pa. 1979). "[O]nly by health service doctors" is meant to keep laymen from deciding the disputes, not to keep doctors out of court.

## II

Defendant contends that equity jurisdiction is improper. If we found that section 6324(c) was an exclusive remedy, equitable relief would not be available, of course. *Pennsylvania Game Commission, supra*. The propriety of equity jurisdiction is within the sound discretion of the court. *Peoples-Pittsburgh Trust Co. v. Saupp*. 320 Pa. 138, 182 Atl. 376 (1936); *Pittsburgh Airport Motel v. Airport Asphalt*, 322 Pa. Super. 149, 469 A.2d 226 (1983). When accounting is complicated, equity jurisdiction is proper. *Setlock v. Sutila*, 444 Pa. 552, 282 A.2d 380 (1971). The accounting need not be "impossible" for jury. *Fudula v. Keystone Wire and Iron Works*, 283 Pa. Super. 502, 424 A.2d 921 (1981).

In this case, were plaintiffs to prevail, Blue Shield would need to calculate an actual-charge-based rate of compensation for the numerous plaintiffs, apply it to a substantial number of actual billings, and reconcile that calculation with the compensation plaintiffs have actually received. The potential for confusion is demonstrated by the transcript of the Medical Review Committee's hearing. On page 72 of the hearing transcript the chairman evidently was still under the impression that plaintiffs were seeking to recover their *actual* charges. If experienced professionals familiar with these problems and processes are susceptible to misunderstanding, how much more a lay jury? We conclude that equity jurisdiction is appropriate.

### III

We come finally to the question of whether summary judgment is appropriate at this juncture. Summary judgment is to be granted only "where the right is clear and free of doubt." *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 175, 507 A.2d 323, 331 (1986). Pa. R.C.P. 1035(b) requires that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The bases for the judgment are the pleadings, depositions, answers to interrogatories, admissions, and affidavits.

As a preliminary matter, we are cognizant that this case was remanded so that the administrative remedy could be exhausted. The exhaustion doctrine is intended "to ensure that claims will be heard, as a preliminary matter, by the body having expertise in the area," to make findings, and to correct the body's own mistakes. *St. Clair v. Pennsylvania Board of Probation and Parole*, 89 Pa. Commw. 561, 493 A.2d 146 (1985). Even if the deliberating body is not an administrative agency, findings of fact are desirable in the event of subsequent judicial review. *Cement National Bank v. Department of Banking*, 425 Pa. 554, 230 A.2d 209 (1967). If this were a question of medical necessity, for example, the committee's findings of fact would be particularly valuable.

The committee's findings are essentially conclusions. However, we do not consider it worthwhile or necessary to remand for findings of fact. The committee's conception of the issue, for example, evidently was "whether the group of litigants that you represent were treated any differently than the others who came out at the same time." Medical Review Committee Hearing, August 5, 1986. To remand for further proceedings at this point,

especially on an issue which is not essentially medical in nature, would be an inefficient and probably ineffective exercise.[5] Therefore we will consider the summary judgment motions.

It appears that Blue Shield's prior practice was to switch break-out doctors to actual-charge-based rates at the next annual update. It appears that that practice was changed with regard to plaintiffs. What is seriously disputed is whether that change was a breach of contract. There are unresolved issues raising questions of fact which preclude the granting of summary judgment. A review of the persistent denials in defendant's answer makes it apparent that certain crucial findings of fact will be necessary in this case, and summary judgment is inappropriate.

For example, there are differences over whether the method of paying break-out physicians was incorporated into the contract, or was subject to unilateral change by defendant. There are differences over whether the change in the method of compensation for break-out physicians required the Insurance Commissioner's approval, and over whether that approval was obtained.[6] This is not, in our view, such a clear case that summary judgment should be granted. Summary judgment as to the declaratory

---

5. We encourage the committee to make more detailed findings in the future.

6. "[A]ll *methods* and rates of payment by such corporation to health service doctors . . . shall be approved by the [Insurance] department before they become effective." 40 Pa. C.S. §6329(a) (emphasis supplied). *Cf. Cosgrove v. Bowen*, 649 F. Supp. 1433 (S.D.N.Y. 1986) (Secretary of Health and Human Services abused discretion by failing to amend regulations when Deficit Reduction Act resulted in break-out physicians being denied switch to actual-charge-basis compensation at next annual update.)

judgment, although procedurally permissible. *Pennsylvania PUC Bar· Assoc. v. Thornburgh*, 62 Pa. Commw. 88, 434 A.2d 1327 (1981), is therefore, also not appropriate. Consequently we enter the following

## ORDER OF COURT

And now, August 10, 1988, after oral argument and careful consideration of the briefs, the following order is entered:

(1) Defendant's preliminary objections are denied.

(2) Plaintiffs' motion for summary judgment is dismissed.

(3) Defendant's cross-motion for summary judgment is dismissed.