Conestoga National Bank of Lancaster et al.,
Appellants, *v.* Patterson.

Argued May 26, 1970. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*Martin P. Snyder,* with him *Paul A. Mueller, Jr., Harris C. Arnold,* and *Barley, Snyder, Cooper & Mueller, Arnold, Bricker, Beyer & Barnes,* and *Morgan, Lewis & Bockius,* for appellants.

*Harry E. Sprogell,* with him *Llewellyn R. Bingaman, Raymond Pearlstine* and *Bingaman, Hess, Cob-*

*lentz & Bell, Wisler, Pearlstine, Talone & Gerber,* and *Saul, Ewing, Remick & Saul,* for appellee.

*Frederic G. Antoun,* Deputy Attorney General, with him *D. Joseph Snyder,* Assistant Attorney General, and *William C. Sennett,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, March 18, 1971:

The issues in this appeal have required this Court to reconsider its holding in *Cement National Bank v. Department of Banking,* 425 Pa. 554, 230 A. 2d 209 (1967). After considerable and careful study, we have concluded that the procedures sanctioned in *Cement National Bank* do not afford protesting banks in branch application situations the rights of procedural due process which are theirs by virtue of the Fourteenth Amendment to the Constitution of the United States and Article V, Section 9, of the Pennsylvania Constitution.

This case is an appeal from the order of the Department of Banking authorizing American Bank and Trust Company of Pennsylvania ("applicant") to establish a branch bank. Our jurisdiction is properly invoked under Section 905(c) of the Pennsylvania Banking Code of 1965[1] and Act of June 24, 1895, P. L. 212, §7.4, as amended, Act of August 14, 1963, P. L. 819, §2, and Act of June 30, 1967, P. L. 154, §1, 17 P.S. §191.4(5) (Supp. 1970).[2]

On February 6, 1969, applicant filed an application with the Department of Banking under Section 904(b)(iv) of the 1965 Banking Code for permission to establish a branch at 42-44 North Prince Street, Lancaster, Pennsylvania. Applicant's main office is situated

---

[1] Act of November 30, 1965, P. L. 847, §905, 7 P.S. §905.

[2] See discussion at n. 11, infra.

in the City of Reading, Berks County. At the time of filing the 1969 application, applicant already operated two other branches in Lancaster County, one in Reamstown and one in Columbia.

Appellants are the Conestoga National Bank and the Fulton National Bank (the "protesting banks"), each of which has its principal office in Lancaster. They were notified informally of the filing by a Banking Department examiner and indicated their intention to file a formal protest.

On March 13, 1969, a Letter of Authority for establishment of the proposed branch bank was issued by the Department of Banking. The protesting banks had not filed formal protests by this time. Since the sixty-day period for allowance of protests had not yet lapsed, they requested that the Letter of Authority be withdrawn to permit them to file their protests. The Secretary of Banking agreed to request an opinion from the office of the Attorney General to determine if the Banking Department had the authority to reconsider its decision in light of the protests. The protesting banks also requested the right to have a hearing on their protests and access to the branch application and supporting data to help them in preparing their protests. These latter requests were refused.

On April 7, 1969, the Attorney General advised the Secretary of Banking that the Banking Department could properly reconsider its decision, and the Letter of Authority to establish applicant's proposed branch was rescinded two days later. The protesting banks were given twenty days within which to file their objections. Appellants filed the objections. After additional investigation, the Secretary of Banking issued a second Letter of Authority on May 19, 1969, approving the application for the branch bank. This Letter was accompanied by a formal decision and order of the Department con-

taining findings of fact and conclusions of law. This appeal followed.

The protesting banks contend that they were deprived of due process of law by the refusal of the Department of Banking to permit either a hearing on the bank branch application or, as a minimum, access to the contents of the branch application and other supporting data relating to the application on file with the Department. They also argue that the Department erred in not making any finding that circumstances had changed since American's petition for a branch bank was denied in 1965. They further complain that supplementary findings that circumstances had changed— made by the Department after it learned of the protesting banks' intention to bring this appeal—were too little and too late. Finally, appellants assert that applicant failed to meet its burden of proof necessary to establish the need for a branch bank, and that the Department erred in granting the application.

Under our view of this case, we need not presently reach the merits of whether the Department erred in granting the application, because we believe appellants' procedural due process rights require the remand of the case for a hearing before the Department of Banking, at which they shall have the opportunity to present evidence and prior to which the protesting banks should have access to the application and supporting data.[3] A record should be made of the hearing to enable appel-

---

[3] After the requisite procedural safeguards have been observed, the proper scope of judicial review in considering the merits involved is set forth in *Delaware County National Bank v. Campbell*, 378 Pa. 311, 106 A. 2d 416 (1954): "We will not overrule or reverse . . . [the Department of Banking] if there is adequate evidence to support its findings of fact and the proceeding is free from error of law and there has been no clear abuse of discretion. Cf. Rolling Green Golf Club Case, 374 Pa. 450, 458, 97 A. 2d 523." Id. at 327-28, 106 A. 2d at 424.

lants to avail themselves of their right to effective judicial review, if they should so desire. The above requirements are necessary to preserve the constitutionality of Section 905 of the Banking Code under both the Fourteenth Amendment and Article V, §9 of the Pennsylvania Constitution.

## I. PROCEDURAL DUE PROCESS

### a. In General

There is no general definition of procedural due process applicable to every situation, and courts have deliberately refrained from formulating one. As one court has noted: "Procedural Due Process, as this court understands it, is not susceptible of advance definition. In the administrative field the desiderata are notice and opportunity to be heard . . . ." *Webb v. United States,* 21 F.R.D. 251 (E.D. Pa. 1957).

One of the more extensive discussions of the subject occurred in *Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v. McElroy,* 367 U.S. 886, 81 S. Ct. 1743 (1961). Speaking for the Court, Mr. Justice STEWART observed that: "As these and other cases make clear, consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action. Where it has been possible to characterize that private interest (perhaps in oversimplication) as a mere privilege subject to the Executive's plenary power, it has traditionally been held that notice and hearing are not constitutionally required . . . Moreover, the governmental function operating here was not the power to regulate or license, as lawmaker, an entire trade or profession, or to control an entire branch of private

business, but, rather, as proprietor, to manage the internal operation of an important federal military establishment." Id. at 895-96, 81 S. Ct. at 1148-49 (holding commander of naval institution could summarily withdraw permission of civilian employee to enter base for security reasons) (footnote and citations omitted).

Certain other principles articulated in the past are also relevant. This Court's most comprehensive treatment of the matter is set forth in *Wiley v. Woods*, 393 Pa. 341, 141 A. 2d 844 (1958) : " 'Due process of law', while incapable of exact definition, generally means 'law in the regular course of administration through courts of justice, according to those rules and forms which have been established for the protection of human rights' : 12 Am. Jur. §571, p. 264, and cases therein cited. Its essential elements are 'notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause' : 12 Am. Jur. §573, pp. 267, 268; Com. ex rel. Chidsey v. Keystone Mut. Cas. Co., 373 Pa. 105, 109, 95 A. 2d 664; Carter v. Kubler, 320 U.S. 243, 88 L. Ed. 26, 64 S. Ct. 1; Ohio Bell Telephone v. Public Utilities Commission of Ohio, 301 U.S. 292, 81 L. Ed. 1093, 57 S. Ct. 724; Interstate Commerce Commission v. Louisville & Nashville Ry. Co., 227 U.S. 88, 57 L. Ed. 431, 33 S. Ct. 185; Jordan v. American Eagle Fire Insurance Company, 169 F. 2d 281, 288. That the principle of due process is fully applicable to hearings before administrative tribunals is well established : Commonwealth ex rel. Chidsey v. Mallen et al., 360 Pa. 606, 63 A. 2d 49; Pittsburgh v. Pennsylvania Public Utility Commission, 171 Pa. Superior Ct. 391, 90 A. 2d 850." Id. at 350-51, 141 A. 2d at 849-50.

With these principles in mind, we proceed to a consideration of the applicability of procedural due process to this case.

## b. Applicability

Procedural due process does not require notice and a hearing in every conceivable situation involving administrative action. E.g., *Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v. McElroy,* supra. However, these procedural safeguards should accompany a situation where the administrative action is adjudicatory in nature and involves substantial property rights. *Pennsylvania State Athletic Comm. v. Bratton,* 177 Pa. Superior Ct. 598, 604-05, 112 A. 2d 422, 425 (1955).[4] Thus our inquiry turns to an examination of whether the Department of Banking's action here possesses those characteristics.

It was a settled principle in this Commonwealth that, prior to the effective date of Art. V, Sec. 9 of the 1968 Pennsylvania Constitution,[5] appeals to this Court in the nature of broad certiorari would lie from an order of an administrative agency only if that agency's action was judicial in nature and substantially affected property rights. *Keystone Raceway Corp. v. State Harness Racing Commission,* 405 Pa. 1, 6, 173 A. 2d 97, 100 (1961); *Swank v. Myers,* 386 Pa. 331, 337, 126 A. 2d 267, 270 (1956); *Delaware County National Bank v. Campbell,* 378 Pa. 311, 321, 106 A. 2d 416, 419 (1954); *Newport Township School Dist. v. State Tax Equalization Board,* 366 Pa. 603, 611, 79 A. 2d 641, 644 (1951).

In *Delaware County National Bank,* supra, we held that a national bank has standing to protest the appli-

---

[4] "One of the purposes of the Local Agency Law and of the Administrative Agency Law, as amended, is to provide for procedural due process and to provide for appeals from an adjudication which is thought not to have complied with due process requirements." *Smethport Area School District v. Bowers,* 440 Pa. 310, 318 n. 12, 269 A. 2d 712, 716 n. 11a (1970).

[5] The issue of appealability is now clearly and finally resolved. Art. V, Sec. 9 of the Constitution has created and mandated a *right of appeal* from agency action. See discussion at n. 11, infra.

cation of a state bank for a new branch and that this Court could review such administrative action. 378 Pa. at 326, 106 A. 2d at 420. Therefore, clearly implicit in that holding is our judgment that a decision on an application for a branch bank is judicial in nature and involves substantial property rights.

Nor was *Delaware County National Bank* an isolated situation. This Court has granted certiorari in branch banking cases on several occasions for the same reasons. See *Dauphin Deposit Trust Company v. Myers,* 401 Pa. 230, 164 A. 2d 86 (1960); *Ritter Finance Company, Inc. v. Myers,* 401 Pa. 467, 165 A. 2d 246 (1960); *Cumberland Valley Savings and Loan Assn. v. Myers,* 396 Pa. 331, 153 A. 2d 466 (1959); *Philadelphia Saving Fund Society v. Banking Board,* 383 Pa. 253, 118 A. 2d 561 (1955).

In light of these authorities it seems clear that the Department's action here represents "judicial" action by an administrative agency. Confronted by a branch application, the Department must conduct appropriate investigations and hearings. Its discretion must be guided by whether there is a need for banking services or facilities such as are contemplated by the establishment of a branch. *Ritter Finance Co. Inc. v. Myers,* supra, at 474, 165 A. 2d at 250. The discretion delegated to the Department of Banking by the General Assembly is subject to the declared general purposes of the 1965 Banking Code.[6] Included in those purposes are: "[t]he safe and sound conduct of the business of institutions subject to this act" (Sec. 103(a)(i); "[t]he maintenance of public confidence in them," (Sec. 103(a)(iii)); "[t]he protection of the interests of their depositors, creditors and shareholders and of the interest of the public in the soundness and preservation of the

---

[6] Act of November 30, 1965, P. L. 847, §103, 7 P.S. §103(a)(viii).

banking system" (Sec. 103(a)(iv)). See *Ritter Finance Company, Inc. v. Myers,* supra, at 474, 165 A. 2d at 249-50. This determination involves an exercise of careful judgment in light of complicated factors surrounding the banking industry and ". . . represents much more of an adjudicative process or judicial decision than required in issuing, for example, occupational licenses, where the only determination is whether the applicant meets specific *minimum* standards." *Man O' War Racing Assn. Inc. v. State Horse Racing Commission,* 433 Pa. 432, 439, 250 A. 2d 172, 175 (1969).

As to the other trait requiring the protection of notice and a hearing, we believe that it is clear beyond question that substantial property rights are involved in the Banking Department's adjudication here. Those rights include not only the rights of the applicant and the protesting banks but also the rights of the surrounding financial community. As has been noted before, the banking system is unique in that the failure of one of several competing institutions frequently leads not to the enhancement of the relative position of the surviving competitors but to possible adverse effects to all. See *Delaware County National Bank,* supra, at 324, 106 A. 2d at 422. Thus, we reaffirm today the implicit holding of *Delaware* that the approval by the Department of Banking of an application for the establishment of a branch bank is a judicial determination involving substantial property rights.[7]

---

[7] It should be noted that "adjudication" is defined in the Administrative Agency Law as ". . . any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities or obligations of any or all of the parties to the proceeding in which the adjudication is made, but shall not mean any final order, decree, decision, determination or ruling based upon a proceeding before a court, or which involves the seizure or forfeiture of property, or which involves paroles or pardons or releases from mental institutions." Act of June 4, 1945, P. L. 1388, §2, as amended, 71 P.S. §1710.2(a) (Supp. 1970).

It therefore follows that procedural due process requires that protesting banks be afforded notice, a hearing, the opportunity to present evidence, and access to the application and supporting data when confronted with a proposal for a new branch.[8]

We do not intimate that the proceedings before the Department of Banking must be attended by the full panoply of trial-type formalities surrounding an ad-

---

[8] Appellees argue that Sec. 302 of the Department of Banking Code, Act of May 15, 1933, P. L. 565, as amended, 71 P.S. §733-302 prohibits disclosure. That section provides: "A. Neither the secretary, nor any deputy, examiner, clerk, or other employe of the department, shall publish or divulge to anyone any information contained in or ascertained from any examination or investigation made by the department, or any other paper or document in the custody of the department, *except when the publication or divulgement of such information is made by the department pursuant to the provisions of this act or of any other law of this Commonwealth, . . .*" (Emphasis added.)

The instant case presents a situation where divulgement is made pursuant to requirements of other laws of this Commonwealth, namely the constitutional right of appeal, as well as pursuant to general requirements of procedural due process. We also believe such controlled divulgement in these circumstances is favored by public policy. As Judge Sobeloff noted in his dissenting opinion in *First National Bank of Smithfield v. Saxon*, 352 F. 2d 267 (4th Cir. 1965) : "By affording objecting banks an adequate opportunity to be heard the Comptroller receives the benefit of a report suggesting reasons why the particular application should not be granted. The self-interest of the complainant may thus serve the public interest by raising considerations that might otherwise never come to light before the Comptroller. Thus, in presenting its own position, the objecting bank is also arguing that of the community which has a vital interest in the solvency of its local banks. The bank can perform this useful function only if it is allowed to know the supporting data presented to the Comptroller by the applicant." Id. at 273. It also should be noted that since 1966, the Comptroller of the Currency has made available all materials in a branch application to the protesting banks. Bloom, *Hearing Procedures of the Office of the Comptroller of the Currency*, 31 Law & Contemp. Prob. 723, 725 (1966).

versary hearing where the rules of evidence are strictly observed. The delicate nature of banking proceedings may make appropriate greater informality. See *First National Bank of Smithfield v. Saxon*, 352 F. 2d 267, 275-76 (4th Cir. 1965) (SOBELOFF, J., dissenting). But the need for such informality may in no event *preclude* a party in interest, (a bank in the community where the branch is to be established) from being given notice of the proposed branch application, from being informed of the evidence presented by the applicant, from presenting evidence on its own behalf, and from having a record of the proceedings made so that judicial review can be preserved. See also *Webster Groves Trust Co. v. Saxon*, 370 F. 2d 381 (8th Cir. 1966); Davis, Administrative Law §4.04 (1958 edition); Id. (1965 Supplement).[9] Otherwise, the parties' *right to appeal* would be meaningless, for there would be no record.

The Department's procedures prior to today were in marked contrast to the federal banking system. The Department was not required to hold a hearing or establish a record. On the other hand, although the Comptroller of the Currency could approve a branch application of a national bank without affording protesting banks a hearing, such approval was subject to *de novo* review in the district court, *where a hearing was held and a record made.* On the basis of that record the district court set aside the Comptroller's action "if, in the light of the facts found by the court, it concludes that the Comptroller has abused, exceeded or arbitrarily applied his discretion." *First National Bank of Smithfield v. Saxon*, supra, n. 5, at 274.[10]

---

[9] See generally, 72 Dick. L. Rev. 483 (1968); 29 U. Pitt. L. Rev. 123 (1967).

[10] It will be recalled that a prime argument advanced for the policy to curtail hearings in all state branch application cases was to equalize the length of time required for a state bank to obtain branch approval as compared to a national bank. Act of November

## II. The Pennsylvania Constitution

Appellees contend, inter alia, that no hearing is required because Section 31 of the Administrative Agency Law, which requires a hearing in order that any adjudication of an agency be valid, is not made applicable to the Department of Banking. Act of June 4, 1945, P. L. 1388, §51, as amended, 71 P.S. §1710.51. We find no merit in this argument.

Article V, Sec. 9 of the Pennsylvania Constitution of 1968 provides: "There shall be a right of appeal in all cases to a court of record from a court not of record; *and there shall also be a right of appeal* from a court of record *or from an administrative agency* to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law." (Emphasis added.)

This section became effective January 1, 1969, prior to any of the proceedings involved in the case now before us. We believe that this constitutional provision as implemented supersedes Sec. 905(c) of the 1965 Banking Code insofar as that section pertains to appeals to this Court on broad certiorari, and mandates that both applicants and protesting banks have an appeal *as of right*,[11] a right that would be rendered a

---

30, 1965, 7 P.S. §2005, comment. Clearly, however, our decision today will not adversely affect the length of time involved, for a protesting national bank, when contesting a branch approval by the Comptroller of the Currency, has the right of appeal to the federal courts.

[11] As we noted in *Smethport Area School District v. Bowers*, 440 Pa. 310, 269 A. 2d 712 (1970), Section 9 of Article V of the Constitution was implemented by, among other acts, Act No. 354 of 1968, effective January 1, 1969. This Act was an amendment to the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, as amended (71 P.S. §1710.1 et seq.) and provides for appeals from "agencies of the Commonwealth" as defined by that law. Section 2 of the Admin-

nullity if the Department of Banking could act ex parte, or without establishing an appropriate record of the proceedings necessary to determine the need for the proposed branch bank.

In conclusion, in light of the procedural due process requirements of both the Fourteenth Amendment and Article V, Sec. 9 of the Pennsylvania Constitution, the order of the Department of Banking is vacated and the case remanded for further proceedings consistent with this opinion.

Mr. Justice COHEN took no part in the decision of this case.

———

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

A bank is an entity created by the Legislature and should be subject to the statutory provisions, powers, limitations and boundaries allowed or provided by the Legislature, subject, of course, to the Constitution. Because of the unique and delicate nature of Banks and

———

istrative Agency Law defines "agency" as "any department, departmental administrative board or commission", etc., "having Statewide jurisdiction, empowered to determine or affect private rights, privileges, immunities or obligations by regulation or adjudication . . ." This would include the Department of Banking. The general appeal provisions of the Administrative Agency Act, Sections 41 through 44, which apply to agencies listed in Section 51, do not apply, by virtue of Section 46, "to any adjudication which under existing law may be appealed to a court other than the Court of Common Pleas of Dauphin County". The Department of Banking is not listed in Section 51 and, as noted on page 1, adjudications by it are appealable to the Supreme Court under the Act of 1963. By virtue of the Appellate Court Jurisdiction Act of 1970, which became effective September 11, 1970, jurisdiction in such cases now lies with the Commonwealth Court. The case at bar, however, was commenced and appealed in the period January 1, 1969, to September 11, 1970. The appeal was thus properly brought in this Court as a matter of right. Appeals of this nature filed subsequent to September 11, 1970 will be to the Commonwealth Court as provided in Section 403(1) of the new Jurisdiction Act.

Banking, a bank should not have to reveal to its competitors its confidential information and secrets, including, inter alia, its depositors, its customers—present and prospective, or its present or likely borrowers, its policies and its real financial condition or plight, or its present or future plans. Yet that is what the majority Opinion is now permitting under the farfetched, straw-like stretch of the Constitution. Moreover, the majority is once again conducting another "burial rite" for Stare Decisis.

For these reasons, I deem it appropriate to state at length the facts, the controlling statutes, our pertinent and controlling prior decisions and established legal principles, and the reasons therefor.

This is an appeal from the Order of the Department of Banking authorizing American Bank and Trust Company of Pennsylvania (hereinafter referred to as American), whose principal office is in Berks County, to establish a branch bank at 42-44 North Prince Street in Lancaster, Pennsylvania.

On February 6, 1969, American filed an Application with the Department of Banking in accordance with the Pennsylvania Banking Code of 1965 (Act of November 30, 1965, P. L. 847, 7 P.S. §904(b)(iv)), seeking authority to establish a branch bank at the above-mentioned site. At that time, American already had two branch banks in Lancaster County, one in Reamstown, 17 miles northeast of the proposed branch site, and the second in Columbia, 10.8 miles west of the proposed site.

Appellants, Conestoga National Bank and Fulton National Bank (hereinafter called the Protesting Banks), each of which had its principal office in Lancaster, were informed of American's Application by the Banking Department Examiner. They, in turn, informed the Examiner that they intended to file a formal protest.

On March 13, 1969, a Letter of Authority for the establishment of the proposed branch bank was issued by the Department of Banking. The Protesting Banks had not filed formal protests at this time, and, as the time for filing them had not lapsed, they requested that the Letter of Authority be withdrawn to allow them to file such formal protests and supporting data as they considered appropriate. After a conference with the Secretary of Banking, it was agreed that the issue of the establishment of this branch bank would be reopened if the Attorney General approved this procedure. At this conference, the Protesting Banks also requested both (1) the privilege of a hearing on their protests and (2) access to the Application and supporting data filed by American to aid them in the preparation of their protests. These requests were refused.

After a formal Opinion of the Attorney General approved the procedure, the Secretary of Banking withdrew the Letter of Authority. The Protesting Banks filed formal protests and presented evidence, including written data and contentions, to support these protests. An additional investigation was made by the Banking Department and all the evidence was considered. On May 19, 1969, a second Letter of Authority was issued approving the Application for the branch bank, accompanied by the formal Decision and Order of the Department which contained findings of fact and conclusions of law supporting its Order.

The Protesting Banks contend that they were deprived of due process of law by the refusal of the Department of Banking to permit either a formal hearing sur the branch bank Application or, in the alternative, access to the Application and the data filed in support of it. They also contend that American failed to meet the burden of proof required to establish *the need* for the branch bank. They further assert that the Department of Banking erred in not making any finding that

circumstances had changed since American's petition for a branch bank was denied in 1965 and that supplementary findings that circumstances had changed—which were made by the Department after it learned of the intention of the Protesting Banks to bring this appeal—were too little and too late.

## I.  DUE PROCESS

The contentions made by the Protesting Banks of lack of Due Process were extensively considered and conclusively decided by this Court only three years ago in *Cement National Bank v. Department of Banking,* 425 Pa. 554, 230 A. 2d 209. We concluded there that these contentions were devoid of merit.

### A.  Hearing

Section 905 of the Banking Code of 1965 pertinently provides: *"Approval of branch by department\** (a) *Investigation and discretionary hearings*—Upon receipt of an application for approval of a branch which satisfies the requirements of this Act, the department shall conduct such investigation as it may deem necessary *and, in its discretion, may hold hearings before the department or before the Banking Board."*

The comment of the Banking Commission is as follows:\*\* *"Subsection (a) does not require hearings in connection with branch bank applications* but permits the department to hold such hearings *in its discretion* either before the department or before the banking board."

Section 905 further provides: *"*(c) *Action by department*—Within sixty days after receipt of the application . . . the department shall . . . approve the applica-

---

\* Italics throughout ours, unless otherwise noted.

\*\* Section 104(a) provides that the comments of the Commission may be consulted in the construction and application of the provisions of the Act.

tion *if it finds that there is a need for banking services or facilities such as are contemplated by the establishment of the proposed branch* and that the requirements of this act have been complied with. . . . If the department approves the application, it shall issue to the institution a letter of authority to establish the branch. If the department disapproves the application, it shall give the institution written notice of its disapproval and a statement in detail of the reasons for its decision. The decision of the department shall be final and shall not be subject to review except by the Supreme Court upon broad certiorari."

I need only reiterate what we so pertinently said in *Cement National Bank v. Department of Banking,* 425 Pa., supra (page 559) : "It is clear from the above quoted provisions of the Code that neither an adversary hearing nor any other kind of hearing is *required\** before the Secretary of Banking or at the Department level. This nonrequirement of a hearing is because both the Banking Department and the Legislature have recognized the delicate and sensitive nature of banking and of the banking information in the possession of the Banking Department, which in some matters should remain confidential, and the disastrous effects which divulgence of this information might have on all banks in that community."

Appellants correctly state that in *Cement National Bank v. Department of Banking,* 425 Pa., supra, it was noted that under the Federal system the Comptroller of the Currency was not then required to conduct hearings on the establishment of a branch bank. They point out that since that time the Comptroller's Office changed this procedure to provide for hearings when requested by any party concerned. Even if we were to consider this a wise procedure, it is not the procedure

---

\* Italics in *Cement National Bank.*

provided under Pennsylvania law. The Banking Code, we repeat, provides hearings only in the discretion of the Department. We have hereinabove stated the reasons why the Legislature wisely did not make such hearings mandatory. In the present case, the Department, in the exercise of its discretion, refused to grant a hearing. We believe that the Protesting Banks were given ample opportunity to fully present their position, claims and contentions, and consequently we believe that the Department did not abuse its discretion by refusing to grant a hearing.

## B.   Access to the Application

The Protesting Banks further contend that the Department of Banking deprived them of Due Process when it failed to grant them access to American's Application and the information filed in support of its Application. As we said in *Cement National Bank v. Department of Banking,* 425 Pa., supra (page 559) : ". . . both the Banking Department and the Legislature have recognized the delicate and sensitive nature of banking and of the banking information in the possession of the Banking Department, which in some matters should remain confidential, and the disastrous effects which divulgence of this information might have on all banks in that community. This is further confirmed (1) by Article III, §302, of the Department of Banking Code [footnote omitted] which makes the divulgence of information by the Secretary or by any officer or employee of the Department of Banking, with certain enumerated exceptions, a misdemeanor. . . ."

As the Protesting Banks have made clear in their contentions and arguments both to the Department and to this Court, they are fully aware of the factual and legal issues to be resolved by the Department in deciding whether or not an Application for a branch should be granted. They submitted detailed protests, with ex-

tensive data to support their views. We do not feel that they were handicapped by the refusal of the Department to permit access to American's Application. When we further consider the strong public and legislative policy against such disclosure, as emphasized by the statute making such disclosure a misdemeanor, we must conclude that they have no absolute right of access to the confidential material of American's Application.

As we further said in *Cement National Bank v. Department of Banking,* 425 Pa., supra (page 562): "Banks often forget that they are merely creatures of a Legislature or of Congress, and have only such rights as are granted by Statute or by Congressional Act, as the case may be. The Legislature can grant such powers and impose such conditions and limitations as it desires on all banks and other bodies it creates, provided the same are not unlawful or unconstitutional; and in particular, the Legislature is not required to provide for hearings before its created bodies such as are constitutionally required in judicial proceedings. Moreover, in this case, as we have seen, the Legislature is not required to provide, nor has it provided for hearings at the Department level. The denial of a Judicial or a public or adversary hearing before the Department of Banking or even before a Banking Board is not a violation of procedural due process or of any other Constitutional right; nor is the refusal to permit (a) the inspection of applications and supporting material, or (b) the divulging of information [footnote omitted] by the Secretary of Banking or by any officer or employee of the Department, a violation of any Constitutional right which is possessed by a bank."

## II. ALLEGED ERROR IN GRANTING THE APPLICATION

Appellants further contend that the record does not support the Department's conclusion that a branch

bank may be established at the proposed location. The evaluation of all this evidence, some of it conflicting, some of it merely deductions and conclusions from all the data submitted to or gathered by the Department, is sometimes difficult. However, we must approach this and similar cases mindful of what this Court aptly said in *Blairsville National Bank v. Myers*, 409 Pa. 526, 533-534, 187 A. 2d 655: "A Supreme Court cannot be a Secretary of Banking or a Department of Banking or a Banking Board. These men are not only experts in the technical field of banking, but they may have knowledge of intangibles and imponderables, of strengths and weaknesses which may exist in a particular bank or in the broad banking situation in that banking area which are not clearly or definitely or concretely disclosed in the cold, bare record. For these reasons much must be left to the discretion of the Secretary of Banking or, as the case may be, to the Banking Board.

"We are well aware of the accuracy of the statements in Philadelphia Saving Fund Society v. Myers, 406 Pa., supra, where the Court said (pp. 449-450): 'The question of whether there is a need for the services and facilities of an additional bank or branch is sometimes a delicate and difficult one. The dangers inherent in any situation which may possibly or likely create an overbanked area that may likely weaken or destroy some existing banks to the detriment of depositors, creditors, stockholders, and the public alike, must never be forgotten or minimized ... " ' ... Part of the powers and duties of the Department of Banking . . . is to determine . . . whether the community served and from which a bank draws its depositors and clients has adequate banking facilities and is not overbanked . . . ". . . the clear intention of the statute . . . is the same: to guard against 'overbanking' on the one hand, and 'underbanking' on the other; . . ." ' " ' However, we appropriately added: ' "Where a Board [or Depart-

ment] is composed of able and experienced experts who are dealing with technical questions, a Court should be loath to find a clear abuse of discretion upon a subject or subjects as to which they are far better qualified than any Court." ' "

As this Court said in *Delaware County National Bank v. Campbell*, 378 Pa. 311, 106 A. 2d 416 (pages 327-328) : "We will not overrule or reverse the Banking Board if there is adequate evidence to support its findings of fact and the proceeding is free from error of law and there has been no clear abuse of discretion. Cf. Rolling Green Golf Club Case, 374 Pa. 450, 458, 97 A. 2d 523."

In *First Bellefonte Bank and Trust Company v. Myers*, 410 Pa. 298, 188 A. 2d 726, the Court pertinently said (pages 302-303) : "In this case and in other *similar** cases *it will be necessary for the applicant to* prove (1) that substantially different circumstances or conditions exist from those which existed at the time and place of the rejected application for a branch bank, and (2) that ' "there is a need for banking services or facilities such as are contemplated by the establishment of such branch [citing cases]." ' Philadelphia Saving Fund Society v. Myers, 406 Pa., supra; cf. also Blairsville National Bank v. Myers, supra."

### III. The Facts

With this in mind, I turn now to a brief discussion of the evidence presented in this case. American's initial Application for a branch bank cited a substantial increase in demands for service from customers in the Lancaster area. This demand had developed since the denial of American's previous Application in 1965. The present Application noted further that American was

---

* Italics in *First Bellefonte Bank and Trust Company*.

unable to make requested loans to customers in the Lancaster area because it had no depositors in that area to support the loans. The Application also noted the increasing traffic and congestion in the Lancaster area and stated that not only would the proposed bank have three "drive-in" windows, but also there would be convenient parking facilities at the new location to make banking easier for the public.

The investigators' report set forth inter alia these reasons for granting the Application for this branch. The report stated that the proposed location would "provide for the first time more convenient banking services to the present customers [of American]." In addition, the investigators' report noted that several other local banks in Lancaster were conducting negotiations intending to merge with other banks nearby. They especially noted the proposed merger of the Lancaster County Farmers Bank with banks in Reading and York. They concluded that if these mergers were to take place, competition in the Lancaster area would be maintained on a more favorable level if the proposed branch bank were allowed.

All these facts and factors were presented to the Department before the first authorization was granted. When that authorization was withdrawn at the request of the Protesting Banks, additional evidence was then presented by American, as well as by the Protesting Banks. *The evidence presented by American stressed more fully the changes and circumstances since the denial of American's prior Application in 1965.* In particular, the report stressed that the so-called "conservative" city banks *were not adequately serving* the Lancaster area and that allowing American to open a branch in Lancaster would provide competition which would improve banking services in the area generally. The report also noted the rapid growth of Lancaster

County and the extensive urban renewal project designed to promote economic growth in the City.

All of this evidence was considered before the second authorization was granted on May 19, 1969. The findings of fact filed with that authorization indicate that the Department agreed with American's view of the trend of economic development in Lancaster County and the need for further banking services and increased competition in the banking business. I have studied the record carefully and am convinced that the evidence presented by American to establish a need for this branch bank adequately and amply demonstrated that circumstances had changed since its prior Application, and that there was a definite need for this branch bank.

The Protesting Banks finally contend that the Department of Banking erred in some fashion when it made Supplemental Findings of Fact and Conclusions of Law after the Protesting Banks had filed their petition for review of the decision. We note that there is no requirement that the Department of Banking make any such findings in cases where an Application for a branch bank is granted. It is only where an Application is disapproved that findings must be made. Banking Code of 1965, Section 905(c). This Court noted in *Cement National Bank v. Department of Banking,* 425 Pa., supra (page 560): "However, we again emphasize, as we did in Blairsville National Bank v. Myers, 409 Pa. 526, 534, 187 A. 2d 655, the desirability of having the Department make findings of fact and conclusions —which in their discretion may be brief—whenever protests are filed against the grant of a new bank or of a merger, or of a branch bank, in order to support the Department's final decision. This practice is especially desirable where an appeal by broad certiorari is allowed by this Court."

This advice was followed in this case by the Department of Banking, and I appreciate the additional guid-

ance of the Supplemental Findings of Fact and Conclusions of Law.

In my opinion, the Department of Banking in approving the proposed branch was not guilty of an abuse of discretion or an error of law and its findings were supported by substantial evidence. The majority Opinion which finds a violation of due process is so unrealistic and farfetched as to be almost unbelievable.

I would affirm the Order of the Department of Banking.