PENNSYLVANIA BANKERS ASSOCI-
ATION, Adams County National
Bank, Community Banks, Pennsylva-
nia Association of Community Bank-
ers, and Sterling Financial Corpora-
tion, Petitioners

v.

PENNSYLVANIA DEPARTMENT OF
BANKING, Belco Community Credit
Union, Pennsylvania Department of
Revenue, Attorney General, Respon-
dents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 11, 2006.
Decided Nov. 13, 2006.
Reargument Denied Dec. 13, 2006.

Raymond P. Pepe, Harrisburg, for petitioners.

Linda Carroll, Deputy Chief Counsel, Harrisburg, for respondent, Department of Banking.

Francis X. Crowley, Philadelphia, for respondent, Belco Community Credit Union.

Richard T. Wargo, Jr., Harrisburg, for Intervenor, PA Credit Union Assoc.

BEFORE: FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Pennsylvania Bankers Association, Adams County National Bank, Community Banks, Pennsylvania Association of Community Bankers, and Sterling Financial Corporation (the Banks) have petitioned for review of the July 8, 2005, deemed approval by the Pennsylvania Department of Banking (Department) of Belco Community Credit Union's (Belco) charter conversion application.[1] We vacate and remand.

On May 26, 2005, Belco filed a notice with the Department that it intended to convert its charter from an occupation-based credit union to a community credit union with a proposed field of membership consisting of those who live, work, worship, volunteer or attend school in the Counties of Adams, Cumberland, Dauphin, Lancaster, Lebanon, Perry and York. The Department published notice of Belco's "application" in the June 11, 2005, Pennsylvania Bulletin. (Department op. at 1–2; see R.R. at 2a–4a.)

On June 20, 2005, the Banks submitted a "Notice of Protest" to the Department under 10 Pa.Code § 3.5(a),[2] alleging that Belco's application violates state and federal law and, if approved, would harm the Banks and the public interest. The "Notice of Protest" requested that the Department: (1) direct Belco to identify any confidential information in its application and allow the Banks to object to Belco's designations;[3] (2) allow the Banks to inspect and copy the hearing file;[4] and (3) allow the Banks to submit comments and, if necessary, petition for a hearing.[5] (Department op. at 2; see R.R. at 5a–11a.)

By letter dated June 22, 2005, Deputy Secretary Ronald P. Wysochansky (Depu-

---

1. The Banks' amended petition for review contains two counts. Count I, which is in the nature of an appeal, is before the court here. Count II, which is in the nature of an action for declaratory judgment, has been stayed.

2. The Department's regulation at 10 Pa.Code § 3.5(a) states, "Within 10 business days after any required notice by publication ... any interested person may submit to the Department a protest ... concerning the application." The Banks' June 20, 2005, protest was filed within ten days of the June 11, 2005, notice.

3. The Department's regulation at 10 Pa.Code § 3.4(a) states that "a person submitting information may request that the Department deem confidential material not relevant to the property interests of protesting ... persons, such as trade secrets normally not available through commercial publications."

4. The hearing file consists of "the application with supporting data and supplementary information" as well as any information submitted by persons protesting the application. 10 Pa.Code § 3.4(a). The Department's regulation at 10 Pa.Code § 3.4(b) states, "The hearing file shall be available for inspection in the office of the Department upon written request from a protesting person at such time as the Department will prescribe.... Photocopies may be made available, on request, to protesting persons at the established charge."

5. "Persons submitting a protest shall be given a hearing." 10 Pa.Code § 3.6. "A hearing shall be scheduled as soon as practicable after having been requested or ordered, allowing at least 20 business days between the date of notice and the date of hearing." 10 Pa.Code § 3.7.

ty Secretary) denied the Banks' requests, stating that the staff of the Department's "Applications Division" would consider the Banks' protest as a comment on Belco's "notice and application." (Department op. at 3; R.R. at 12a–13a.) The Deputy Secretary also stated that: (1) the Department could not comply with the Banks' requests because the Department has no docket or hearing file relating to Belco's charter conversion;[6] (2) the Department may not disclose information to the Banks pursuant to section 302 of the Department of Banking Code;[7] (3) the Department has discretion under section 503(a.2) of the Credit Union Code[8] in deciding whether to hold hearings, and, when the Department chooses to do so, the Department conducts the hearings pursuant to the General Rules of Administrative Practice and Procedure (General Rules);[9] and (4) the Department is bound by the time frame set forth in section 501(g) of the Credit Union Code.[10] (R.R. at 12a.) The Deputy Secretary further stated:

6. We note that agencies are required to "maintain a docket of all proceedings." 1 Pa.Code § 33.51. We also note that, under 10 Pa.Code § 3.4(a), the hearing file includes, at least, Belco's application. Thus, we are puzzled by this portion of the Department's response.

7. Act of May 15, 1933, P.L. 565, *as amended,* 71 P.S. § 733–302. Section 302 of the Department of Banking Code prohibits the disclosure of certain information by the Department.

8. 17 Pa.C.S. § 503(a.2). Section 503(a.2) of the Credit Union Code states that the Department "may conduct administrative hearings on any matter pertaining to this title, subject to the provisions of 2 Pa.C.S. Chs. 5 Subch. A (relating to practice and procedure of Commonwealth agencies) and 7 Subch. A (relating to judicial review of Commonwealth agency action)." 17 Pa.C.S. § 503(a.2).

9. The General Rules are found in Title I, Part II of the Pennsylvania Code, 1 Pa.Code §§ 31.1–35.251. We note that the Department

Certain of the protestors ... are currently petitioners in various Commonwealth Court actions presently pending in the Court's original and appellate jurisdiction.... The appellate actions were filed in response to adjudications issued by the [Department] in *similar protests* addressing many of the issues you now raise. At the time those protests were filed, the *Department chose to schedule formal administrative hearings* due to the unprecedented nature of the allegations made by your clients in those cases regarding the impact of approval on the property interests of the banks.... While not legally obligated under the Credit Union Code to hold formal adjudicative hearings regarding the protests, the [Department] chose to ensure your clients' concerns were fully and fairly addressed in a complete record with all legal rights available to them *under the General Rules of Administrative Practice and Proce-*

has promulgated regulations that supersede the General Rules. *See* 10 Pa.Code § 3.2(b).

10. Section 501(g) of the Credit Union Code states, "Except as otherwise agreed to by a credit union, the department shall be deemed to have granted approval for a credit union to engage in an activity ... if within 30 days of receipt of written notice from a credit union the department does not act." 17 Pa.C.S. § 501(g). We note that this provision does *not* require that the Department render a decision within thirty days. The Department simply must "act" within thirty days. If the Department "acts" by scheduling a hearing, the thirty-day deemed approval period no longer has any effect. *See Dauphin Plaza Associates v. Department of Transportation,* 127 Pa.Cmwlth. 132, 561 A.2d 61 (1989) (pointing out that, although some statutes provide for a deemed approval if an agency does not render a *decision* within a specific time period, others provide for a deemed approval if an agency does not *act* within a specific time period), *appeal denied,* 525 Pa. 649, 581 A.2d 575 (1990).

*dure* [,] applicable to proceedings under the Credit Union Code, before taking any action in the three credit union community charter matters then pending before the agency. The Secretary's orders and adjudications in those cases have not been stayed, and at the present time, the [Department] is legally bound by the decisions and conclusions of law of our agency head as applicable. To the extent that such adjudications address certain of the matters averred in your ["Notice of Protest"], such issues are most appropriately addressed by the Commonwealth Court.

(R.R. at 13a) (emphasis added).

By letter dated June 28, 2005, Belco informed the Department that, because the Department failed to act within thirty days of receipt of Belco's charter conversion notice, Belco understood that the notice is deemed approved under section 501(g) of the Credit Union Code. (Department op. at 4.)

On July 1, 2005, the Banks appealed the decision of the Deputy Secretary to the Secretary of the Department pursuant to 1 Pa.Code § 35.20.[11] The Banks asserted that the Deputy Secretary's failure to consider the Banks' protest as such violated the Administrative Agency Law,[12] the Department's own regulations and the Banks' constitutional right to due process. The Banks asserted that, if the Department were to approve Belco's application, it would endanger the Banks and the public interest. Thus, the Banks requested a stay of any further action by the Department pending disposition of the appeal. (R.R. at 14a–20a.)

On July 8, 2005, the Secretary issued a decision stating that she would treat the Banks' request for a stay of proceedings as a motion for procedural or interlocutory relief under 1 Pa.Code § 35.177.[13] The Secretary denied the Banks' request for a stay, stating that, under section 501(g) of the Credit Union Code, the Department's ability to impose restrictions, limitations or conditions on the charter conversion expired on June 26, 2005, thirty days after Belco filed its notice. The Secretary indicated that the only action remaining is the ministerial act of filing the articles of amendment to Belco's charter. (R.R. at 28a–29a.) On July 23, 2005, the Department published notice in the Pennsylvania Bulletin that, on July 8, 2005, Belco's application became effective by operation of law. (R.R. at 122a–24a.)

### I. Application Protest Procedures

■ The Banks petition this court for review of the July 8, 2005, deemed approval of Belco's application,[14] arguing that the Department's failure to act by conducting a hearing prior to the deemed approval was contrary to the Department's applica-

---

11. The regulation states, "Actions taken by a subordinate officer under authority delegated by the agency head may be appealed to the agency head by filing a petition within 10 days after service of notice of the action." 1 Pa.Code § 35.20.

12. 2 Pa.C.S. §§ 501–508, 701–704.

13. This regulation states, "After a hearing has commenced in a proceeding, a request may be made by motion for any procedural or interlocutory ruling or relief desired.... Motions shall set forth the ruling or relief sought,

and state the grounds therefor and the statutory or other authority relied upon." 1 Pa. Code § 35.177. We note that the Department had not commenced a hearing; thus, we question the applicability of the regulation.

14. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

tion protest procedures, including the mandatory hearing rule at 10 Pa.Code § 3.6. We agree.

## A. Scope of Procedures

The regulation at 10 Pa.Code § 3.6 states that persons submitting an application protest to the Department "shall be given a hearing." The scope of this regulation is set forth in 10 Pa.Code § 3.2 as follows:

> (a) The provisions of this chapter set forth procedures by which the Department ... and *other entities established under acts wherein the Department has supervisory or regulatory responsibility,* may intelligently inquire into and reach informed decisions with respect to *applications* and in such other cases as the Department in its discretion shall deem proper. These procedures provide a method by which all protesting ... persons may present their views ....
>
> (b) The provisions of this chapter *supersede* the provisions set forth in 1 Pa. Code Chapter 35 (relating to formal proceedings), and any applicable section of 1 Pa.Code Part II (relating to general rules of administrative practice and procedure), including any section relating to the same, similar or related subject matter as that of this chapter.

10 Pa.Code § 3.2.

First, the Banks are entities established under the Banking Code of 1965 (Banking Code),[15] wherein the Department has supervisory and regulatory responsibility over banks. *See* section 103(a)(viii) of the Banking Code, 7 P.S. § 103(a)(viii) (stating that one purpose of the Banking Code is to give the Department supervisory and regulatory responsibility over banking institutions). Belco is an entity established under the Credit Union Code, wherein the Department is given supervisory and regulatory responsibility over credit unions. *See* section 503 of the Credit Union Code, 17 Pa.C.S. § 503 (stating that the Department shall supervise credit unions and, in doing so, is empowered to issue regulations). Second, the regulation at 10 Pa. Code § 3.1 defines the word "application" as a "proposal to charter or license an institution," and, here, Belco has proposed to charter itself as a community credit union as opposed to an occupation-based credit union. Thus, a plain reading of the regulations shows that the application protest procedures, including the mandatory hearing rule at 10 Pa.Code § 3.6, apply here.

## B. "Institution"

The Department argues to the contrary, asserting that Belco is not an "institution" within the meaning of 10 Pa.Code § 3.1, and, thus, Belco's charter conversion notice is not an "application" within the meaning of 10 Pa.Code § 3.2.[16] We disagree.

---

**15.** Act of November 30, 1965, P.L. 847, *as amended*, 7 P.S. §§ 101–2204.

**16.** We note that, although the Department argues here that Belco's charter conversion notice is not an "application," the Department referred to it as an "application" in published notices and in the Deputy Secretary's response to the Banks. (*See* R.R. at 4a, 12a–13a, 124a.)

The Department contends that, because the application protest regulations do not define the word "institution," this court should use the statutory definition of "institution" in either section 102(r) of the Banking Code, 7 P.S. § 102(r), or section 2(A) of the Department of Banking Code, 71 P.S. § 733–2(A). However, the Banking Code and the Department of Banking Code limit the meaning of "institution" for the purposes of those statutes, and the Department's application protest regulations clearly apply to all entities over which the Department has supervisory or regulatory responsibility.

As indicated above, the regulation at 10 Pa.Code § 3.1 (emphasis added) defines the word "application" as a "proposal to charter or license an *institution*." [17] This court has stated that the rules of statutory construction are equally applicable in construing regulations. *Presock v. Department of Military and Veterans Affairs*, 855 A.2d 928 (Pa.Cmwlth.2004). Thus, when the words of a regulation are not explicit, we may ascertain the intention of the rule-maker by considering the object to be attained by the regulation. Section 1921(c)(4) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c)(4).

In *Conestoga National Bank of Lancaster v. Patterson*, 442 Pa. 289, 275 A.2d 6 (1971), prior to the Department's promulgation of the application protest regulations, our supreme court identified the constitutional due process required when a bank protests the application of another bank. Our supreme court held that "procedural due process requires that protesting banks be afforded notice, a hearing, the opportunity to present evidence, and access to the application and supporting data when confronted with a proposal for a new branch." *Id.* at 299, 275 A.2d at 11.

Two years later, in 1973, the Department promulgated the application protest regulations pursuant to rule-making authority set forth in statutes governing banks, pawnbrokers, consumer discount companies, savings associations *and credit unions*. *See* 3 Pa. B. 217 (1973); *see also* 10 Pa.Code Ch. 3, Authority. Thus, the objective was to establish adequate due process for *any* of the supervised or regulated entities who would protest the charter or license application of another. Indeed, the Department stated:

> The purpose of these regulations is to provide a procedural framework for hearings where it is the responsibility of the Department to reach informed decisions as to the public need or public interest [with respect to charter or license applications]. . . .

3 Pa. B. 216 (1973) (emphasis added). Because the regulations were intended to govern *any* charter or license application protest by a supervised or regulated entity, we conclude that the word "institution" in the definition of "application" refers to banks, pawnbrokers, consumer discount companies, savings associations *and credit unions.*

Moreover, the definition of "institution" in the Department of Banking Code cannot be applied to the definition of "application" because the Department of Banking Code definition of "institution" specifically excludes "licensees." *See* 71 P.S. § 733–2(A). If we attempted to apply such a meaning, the definition of "application" would be a "proposal to ... license [an entity that cannot be a licensee]." 10 Pa.Code § 3.1.

In addition, there is no single definition of "institution" in the Department of Banking Code. Sometimes the word "institution" excludes credits unions, and sometimes the word "institution" includes credit unions. *See* 71 P.S. §§ 733–2, 733–303 (stating that, for purposes of this section, the word "institution" shall include credit unions). It would be completely arbitrary for this court to select one definition over another in deciding whether the word "institution" in the application protest regulations includes credit unions.

**17.** We note that the Department added the definition of "application" to 10 Pa.Code § 3.1 in 1977 for clarification purposes. *See* 7 Pa. B. 1093 (1977). Prior to the amendment, 10 Pa.Code § 3.1 stated that the regulations set forth procedures by which the Department and the entities supervised or regulated by the Department may inquire into "applications to charter or license *such institutions*." 7 Pa. B. 1093 (emphasis added). Thus, prior to adding the definition of "application" for clarification purposes, the word "institution" in the regulations clearly referred to any of the entities supervised or regulated by the Department.

## C. Section 503(a.2)

■ The Department next argues that the General Assembly intended to "make a clean break from" the application protest procedures, including the mandatory hearing rule in 10 Pa.Code § 3.6, by the enactment of section 503(a.2) of the Credit Union Code, which states that the Department "may" conduct administrative hearings subject to the Administrative Agency Law on any matter pertaining to the Credit Union Code. (Department's brief at 38.) We disagree.

Obviously, section 503(a.2) of the Credit Union Code gives the Department discretion to conduct hearings on credit union matters. Indeed, some credit union matters may not require a hearing. However, the Department, consistent with the due process requirements set forth by our supreme court in *Conestoga*, has promulgated a regulation, with the full force and effect of law, requiring a hearing on credit union application protests. The Department does not violate section 503(a.2) of the Credit Union Code by complying with its regulation and holding a hearing on every protest; section 503(a.2) plainly states that the Department "may" conduct a hearing on any credit union matter. Thus, contrary to the Department's assertion, the enactment of section 503(a.2) of the Credit Union Code does not represent a "clean break from" the mandatory hearing rule.

## D. Case Law

The Department also argues that, under *Pennsylvania Bankers Association v. Pennsylvania Department of Banking*, 893 A.2d 864 (Pa.Cmwlth.2006), the Department's application protest regulations do not apply to credit unions. We disagree.

In *Pennsylvania Bankers Association*, three credit unions gave notice to the Department of their intent to convert to community credit unions. Several banks protested and filed petitions for intervention pursuant to 1 Pa.Code § 35.24.[18] The Secretary of Banking dismissed the banks as intervenors because they failed to prove standing during hearings conducted by the Department. This court held that, where a financial institution that is not governed by the Credit Union Code protests a credit union charter conversion application and files a petition for intervention, the financial institution must satisfy traditional tests for standing during a hearing conducted by the Department. *Pennsylvania Bankers Association*.

This court's decision in *Pennsylvania Bankers Association* has no relevance here because the banks in that case protested credit union applications under 1 Pa.Code § 35.24 by filing a petition to intervene. The Banks in this case protested Belco's application under 10 Pa.Code § 3.6, which requires a hearing without the necessity of filing a petition to intervene. Because *Pennsylvania Bankers Association* never addressed the filing of a credit union application protest under 10 Pa.Code Chapter 3, which is at issue here, we shall not give further consideration to *Pennsylvania Bankers Association*.

## II. Section 302 of the Department of Banking Code

The Banks also argue that the Department erred in denying the Banks access to the hearing file based on section 302 of the Department of Banking Code. The Banks

---

18. The regulation at 1 Pa.Code § 35.23 allows a person objecting to the approval of an application to file a protest. The regulation at 1 Pa.Code § 35.24 states that the filing of a protest does not make the protester a party to the proceeding and that a separate petition to intervene is required for that purpose.

maintain that section 302 of the Department of Banking Code is unconstitutional to the extent that it prohibits protesters from inspecting hearing files pursuant to 10 Pa.Code § 3.4. We agree.

The regulation at 10 Pa.Code § 3.4(b) states that the hearing file shall be available for inspection in the office of the Department upon written request from a protesting person and that photocopies may be made available upon request at the established charge. The hearing file consists of: (1) the application with its supporting data and supplementary information; (2) any data and information submitted by protesting, objecting and other interested persons in favor of, or in opposition to, the application; and (3) all factual information contained in any field investigation report made by a Department examiner, unless deemed confidential by the Department. 10 Pa.Code § 3.4(a). A person submitting information may request that the Department deem confidential any material that is not relevant to the property interests of protesting, objecting and other interested persons, such as trade secrets normally not available through commercial publications. *Id.*

■ Section 302(A)(2) of the Department of Banking Code provides, in pertinent part, as follows:

Neither the secretary nor any deputy, examiner, clerk, or other employe of the [D]epartment, shall publish or divulge to anyone any information contained in or ascertained from any examination or investigation made by the [D]epartment, or any letter, report, or statement sent to the [D]epartment, or any other paper or document in the custody of the [D]epartment, except when the publication or divulgement of such information is made by the [D]epartment pursuant to the provisions of this act. . . .

71 P.S. § 733–302(A)(2).

As indicated above, in *Conestoga,* our supreme court held that "procedural due process requires that protesting banks be afforded notice, a hearing, the opportunity to present evidence, and *access to the application and supporting data* . . . ." *Id.* at 299, 275 A.2d at 11 (emphasis added). In so holding, our supreme court recognized that section 302 of the Department of Banking Code prohibited the disclosure of information; however, our supreme court stated that, in an application protest case, due process requires the disclosure of information. *Id.* The court explained that a protesting bank serves a useful function by suggesting reasons why a particular application should not be granted, and the "bank can perform this useful function only if it is allowed to know the supporting data presented . . . by the applicant." *Id.* at 299 n. 8, 275 A.2d at 11 n. 8 (quoting *First National Bank of Smithfield v. Saxon,* 352 F.2d 267 (4th Cir.1965)).

Based on the reasoning in *Conestoga,* we conclude that section 302 of the Department of Banking Code is unconstitutional to the extent that it prohibits application protesters from inspecting hearing files pursuant to 10 Pa.Code § 3.4.[19]

---

19. We note that, in *Conestoga,* it was not necessary for our supreme court to hold that section 302 of the Department of Banking Code is unconstitutional because, at that time, section 302 allowed the Department to disclose information pursuant to "the provisions of this act *or of any other law of this Commonwealth." Conestoga,* 442 Pa. at 299 n. 8, 275 A.2d at 11 n. 8 (emphasis added). Our supreme court stated that the disclosure of information pursuant to the requirements of due process was disclosure pursuant to other laws of this Commonwealth. *See Conestoga.* We note that the phrase "or of any other law of this Commonwealth," which saved the provision from being declared unconstitutional,

## III. Conclusion

Because the Department's failure to act prior to the expiration of the thirty-day deemed approval period was contrary to the Department's regulations, depriving the Banks of their right to a hearing under 10 Pa.Code § 3.6, we vacate the deemed approval of Belco's charter conversion application and remand for a hearing conducted pursuant to 10 Pa.Code Chapter 3. Because the requirements of procedural due process in an application protest proceeding include access to the application and supporting data, the Banks shall have access to the hearing file under 10 Pa.Code § 3.4.[20]

Senior Judge McCLOSKEY dissents.

### ORDER

AND NOW, this 13th day of November, 2006, the July 8, 2005, deemed approval of Belco Community Credit Union's (Belco) charter conversion application by the Pennsylvania Department of Banking (Department) is hereby vacated, and this case is remanded to the Department for a hearing conducted pursuant to 10 Pa.Code Chapter 3. In addition, the Department shall make the hearing file available under 10 Pa.Code § 3.4.

Jurisdiction relinquished.

was deleted from section 302 by the Act of December 9, 2002, P.L. 1604.

**20.** We reiterate that, under 10 Pa.Code § 3.4, Belco will have the right to request that the Department deem certain submitted information as confidential.